FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 4 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk


## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JUSTIN T. TOLSTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  1:20-CV-4221-MLB |
| | ) | |
| CITY OF ATLANTA GEORGIA, et. al. | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff to submit this memorandum of law in opposition to Defendants' motion to dismiss.  As Plaintiff's complaint is rather extensive, only a brief recitation of the relevant facts precedes discussion.

### I.    RELEEVENT FACTS

While taking a break from studies as an Emory University School of Law LLM student, Plaintiff took his scooter to a festival in Piedmont park.[1] Following *de minimis* contact on an inclined hill in a jam-packed crowd of thousands of people,[2] a compliant Plaintiff was verbally assaulted twice in a vulgar manner,[3] warrantlessly deprived of property that was destroyed,[4] and then savagely taken

---

[1] Pl's Compl. at 11 ¶ 59, ECF No. 1, October 14, 2020.
[2] *Id.* at 5 ¶ 15 (It is a material fact in dispute as to whether FNU Wadsworth shifted his weight and collided with Plaintiff, or vice versa).
[3] *Id.* at 6 ¶¶ 16, 20.
[4] *Id.* at 6 ¶¶ 17, 19.

to the ground[5] with such force it knocked Plaintiff unconscious causing a traumatic brain and neck injury.[6] In retaliation for requesting the very identities of his attackers, Plaintiff suffered continual trespass against liberty.[7] Defendants then denied Plaintiff's repeated request for transport to the hospital for further evaluation.[8] Instead, Defendants released Plaintiff less than 100 yards from the scene of the arrest after a brief time in custody.[9] Over approximately the next two hours, Defendants sadistically interfered with Plaintiff's repeated calls to emergency 911 to arrange transport to the hospital, and to report the loss of his scooter. Defendants intentionally failed to record[10] or preserve[11] the body camera footage (hereinafter "BCF") to cover-up their interactions with Plaintiff.

Following the arrest, Plaintiff attempted to seek redress through the proper administrative remedy established by Defendant City of Atlanta (hereinafter "City") to avoid costly and protracted litigation.[12] The cover-up continued as

---

[5] Def's Mot. at 11, ECF No. 10 (Defendants' counsel makes a most notable admission in stating that officers used a "leg sweep." It remains a disputed fact as Plaintiff contends, he was "slammed to the ground," but the Defendants' admission will be used to defeat their motion where appropriate).

[6] Pl's Compl. at 6, 11 ¶¶ 22, 58-59.

[7] *Id.* at 7,8 ¶¶ 29, 35.

[8] *Id.* at 9 ¶¶ 44, 47.

[9] *Id.* at 9 ¶¶ 48-49.

[10] Pl's Compl. at 60-61 ¶¶ 323-335.

[11] *Id.* at 61-62 ¶¶ 338-48.

[12] *Id.* at 12-13 ¶¶ 70-73.

2

Plaintiff was initially misled and otherwise prevented from reporting the conduct to the Office of Professional Standards (hereinafter "OPS") by Defendants.[13] Ultimately, OPS failed to investigate Plaintiff's complaint and with a staff of less than a half dozen investigators—OPS annually leaves uninvestigated hundreds of alleged acts of misconduct by officers.[14] After a sixteen-month prosecution, causing permanent harm to Plaintiff's reputation, all charges were dismissed.[15]

## II.    ARGUMENT

To survive a motion to dismiss, a complaint—the facts therein accepted as true and viewed in a light most favorable to Plaintiff—must state a plausible claim to relief, and such determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

### A. Qualified Immunity And Municipal Liability

To overcome qualified immunity at the motion to dismiss stage, one must only show: (1) a constitutional violation occurred; and (2) it contravened clearly established law.[17] To show an officer violated clearly established law a Plaintiff may: (1) cite to precedent from a materially similar case where the officers' conduct

---

[13] Pl's Compl. at 12-14 ¶¶ 70-81.
[14] *Id.* at 63-64 ¶¶ 351-360.
[15] *Id.* at 15-16 ¶¶ 91-99.
[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009) (internal quotation omitted).
[17] *Sebastian v. Ortiz*, 918 F.3d 1304, 1307 (11th Cir. 2019).

3

was deemed unlawful; (2) point to a broader principle that should govern the instance; or (3) plead facts that are so obviously clear no reasonable officer would have engaged in the alleged conduct such that preexisting caselaw is irrelevant.[18]

A municipality may be held liable: (1) when a custom or practice is so widespread as to be *defacto* policy adopted by the final decisionmaker,[19] or (2) where the constitutional violations demonstrate the need for specific training is so obviously clear that the final policymakers are deemed deliberately indifferent.[20]

A section 1983 action is not only to receive compensation for past abuses, but also "to serve as a deterrent against future constitutional deprivations [as damages] levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights."[21]

## B. Defendants Are Liable For Count I As The Use Of Gratuitous Force Against The Non-Resisting Plaintiff Was So Grossly Disproportionate It Clearly Violated Established Precedent.

Force by an officer is excessive when it is objectively unreasonable,[22] and "force against a docile suspect can meet the 'obvious clarity' test."[23]  In May, the

---

[18] *Patel v. City of Madison*, 959 F.3d 1332, 1334 (11th Cir. 2020).

[19] *Church v. City of Huntsville*, 30 F.3d 1335, 1343 (11th Cir. 1994).

[20] *City of Canton*, 489 U.S. 380 at 389-90 (1989).

[21] *Owen v. Independence*, 445 U.S. 624, 651 (1985).

[22] *Dukes v. Deaton*, 852 F.3d 1039, 1042 (11th Cir. 2017).

[23] *Patel*, 959 F.3d 1343.

4

Eleventh Circuit held the use of a "leg sweep" to effectuate arrest on a compliant party violates established law purposes of qualified immunity based on the last two prongs of the test.[24] In *Patel v. City of Madison*, grainy body camera footage revealed an arrestee being frisked before suddenly taken to the ground.[25] The court opined: "If a jury believes Patel was not resisting and was complying with officers' commands when [officer] Parker executed the swift and decisive *leg sweep*... a reasonable jury could conclude that the swift and decisive force Parker employed was drastically in excess of what Patel's minor movements warranted."[26]

Here, like in *Patel*, Plaintiff was not resisting—yet suddenly and viciously taken to the ground by Defendants. Plaintiff did not threaten, or curse at officers, and was not given any lawful commands before Defendants' excessive use of force.[27] However, in an afront to the clearly articulated applicable standard in their motion, Defendants' counsel asks this Court to infer "Plaintiff resisted arrest."[28] Yet, Plaintiff was not charged with resisting arrest, which shows not even the arresting Defendants who cited Plaintiff with two obscure city ordinances, believed as much. The preposterous statement relies solely on the very charges

---

[24] *Patel*, 959 F.3d 1333-34.

[25] *Id.*

[26] *Id.* at 1340.

[27] Pl's compl. at 6, 37 ¶¶ 23-24, 205-206.

[28] Def's Mot. at 7, EFC No. 10.

levied by the Defendants—which are a subject of dispute—coupled with a mere footnote citation in Plaintiff's complaint originating from the Georgia Constitution.[29] The unsupported claim that Plaintiff has not been "fully forthcoming" without any elaboration begs the need for continued discovery to afford Defendants the opportunity to bolster their claim. The law as relates to the instant facts is clear: Defendants' grotesque use of force on the non-resisting Plaintiff was gratuitous and violated the most paramount constitutional principle to be free of wanton brutality at the hands of the state.

### C. Defendant City of Atlanta Is Liable For Count II As Plaintiff's Arrest Alone Clearly Demonstrates A Failure To Address The Widespread Use Of Excessive Force, Including Slams, Perpetrated By Officers

Defendant City is liable for Count II as Plaintiff alleges a pattern in both OPS statistics and comparable similar constitutional violations reported to the Atlanta Citizen Review Board (hereinafter "ACRB"). The examples include (1) an officer that used profanity and forcefully "slammed" a citizen to the ground;[30] (2) an officer who knocked a citizen unconscious when he "slammed" him  on the ground "without provocation;"[31] and (3) an officer "slammed" a handcuffed

---

[29] Def's Mot. at 11, EFC No. 10.
[30] Pl's Compl. at 20-21 ¶ 115.
[31] *Id.* at 21 ¶ 116.

citizen onto the ground "without provocation."[32] As noted by opposing counsel,[33] two of the officers were exonerated, but that fact is further evidence of City's overwhelmed OPS system's inability to serve as a check in the social contractual balance between state power and the liberties of the citizens it is entrusted to protect. Only discovery can definitively determine whether officers habitually misuse leg sweeps or slams as outlined in the ACRB cases and the complaint.

As City Defendant and ACRB records are pivotally referenced throughout, an appreciation for their insight is necessary upfront, especially as relates to the numerous City claims. A cursory analysis of public OPS records contained in Plaintiff's complaint, as condensed into the table below,[34] reveals an overwhelmed

| 1. Year | 2017 | 2018 | 2019 |
|---|---|---|---|
| Total Complaints (Priority I) | 678 (370) | 619 (350) | 713 (203) |
| Complaints Sustained (%) | 195 (28.84%) | 119 (19.22%) | 161 (22.58%) |
| Excessive Force | 22 | 20 | 19 |
| Property/Evidence | 19 | 12 | 15 |
| Miscellaneous | 200 | 176 | 181 |
| Received Not Opened | N/A | N/A | 166 |
| **Remained Open** | **237** | **297** | **388** |

office with the inability to fully investigate complaints of excessive force, property deprivation, and other misconduct. Over a three-year span ending in 2019, records show there were at least sixty-one other instances of excessive force with countless

---

[32] Pl's Compl. at 21 ¶ 117.

[33] Def. Mot. at 12, EFC No. 10.

[34] Pl's Compl. at 62-65 ¶¶ 349-61.

complaints uninvestigated or misclassified. However, the OPS statistics are curious in the questionable consistency of the number of complaints relating to excessive force and property or evidence specifically, while cases classified as "miscellaneous" fluctuates considerably comparatively. More inexplicable, the 2019 OPS report notes a 138% increase in excessive force complaints in a year that saw nearly 100 more complaints than the previous year in 2018—yet the same report notes an unexplainable decrease in such cases.[35] This suggests that the subtle art of complaint classification—likely at the discretion of the biased investigator inclined to protect their own—warrants examination in discovery— especially here, as excessive force, misconduct, and appropriate action required are the most reported types of alleged abuse.[36]

City is further liable for intentionally exacerbating the systemic violations by financially hobbling the entity established by policymakers to track, investigate, and hold accountable perpetrators of abuse or corruption.[37] This is painfully apparent as OPS staff left nearly 1000 cases open or uninvestigated thoroughly at year-end in three years reviewed. An additional 166 cases were ambiguously classified "Received Not Opened," in 2019 alone.[38] Further

---

[35] Pl's Compl. at 64 ¶ 358.
[36] *Id.* at 64-65 ¶ 363.
[37] *Id.* at 50-51 ¶ 277-80.
[38] *Id.* at 64 ¶ 357.

evidence of City's indifference is that Defendant Chief of Police Rodney Bryant
as the chief policymaker—routinely fails to respond to ACRB complaints within
30 days as mandated by City's own ordinance thus ratifying his noncompliance.
[39] Also, City's refusal to adequately fund and fill ACRB positions demonstrates
indifference to policing the police.[40] To hide misconduct, Atlanta Police
Department (hereinafter "APD") discontinued publicly reporting OPS
complaints to conceal officers' transgressions, which was ratified by City's
inaction.[41]  Thus, Defendant City is liable for Count II, indifference to the use of
force on non-resisting persons, specifically the use of a slam or leg sweeps.

Alternatively, Defendant City is liable as the multiple failures by officers in
the single event of Plaintiff's arrest demonstrates a need for training. Officers not
only engaged in gratuitous force, but also attempted to nefariously conceal their
actions by failing to preserve evidence. In furtherance of the cover-up, none of the
officers involved filed the required "use of force report," and neither supervisor
ensured such report was completed by the end of the officers' duty as mandated
by APD policy.[42] The actions of both officers and supervisors show a widespread

---

[39] *Id.* at 21, 54 ¶¶ 115, 297.
[40] *Id.* at 68 ¶¶ 375-76.
[41] *Id.* at 53 ¶¶ 291-93.
[42] *Id.* at 23 ¶¶ 125-28.

pattern of indifference to the use of force, the true perverseness of which may be unknown as countless acts may go unreported as happened in the instance.

### D. Defendants Are Liable For Count III The Intentional Destruction Of Plaintiff's Beverage And The Permanent Deprivation Of Plaintiff's Scooter Because Their Conduct Violated Clearly Established Law

A warrantless seizure of property is considered *per se* unreasonable.[43] Wanton property destruction, even of *de minimis* value, is the antithesis of the Fourth Amendment and against Georgia law.[44]

Here, two straight-forward violations were consolidated into a single count. The first occurred moments prior to the use of force when Defendant FNU Wadsworth warrantlessly seized Plaintiff's beverage without warning — **destroyed the contents** — and did not preserve the container as evidence. Defendant Jane Doe 1, in concert with the other Defendants, then seized and permanently dispossessed Plaintiff of his scooter, which opposing counsel avers "Officers [could have] negligently failed to preserve and return."[45]

While Defendants clothe themselves in the plain view doctrine to justify the seizure of plaintiff's beverage, the logic noticeably avoids addressing the total loss of Plaintiff's property. Assuming arguendo this Court finds seizure of Plaintiff's

---

[43] *Katz v. United States*, 389 U.S. 347, 357 (1967).

[44] O.G.C.A 16-7-21(a) (2010) (Intentional damage to property of another, or interfering with the use of one's property without consent is criminal trespass).

[45] Def Mot. at 14.

beverage was appropriate under plain view, acceptance of counsel's incoherent argument would seemingly allow court-sanctioned destruction of the exact evidence that gave rise to the warrantless seizure itself. Surely opposing counsel is not advocating the plain view doctrine is so expansive as to bestow carte blanche upon officers to destroy evidence and personal property with impunity as here.

### E. Defendant City Of Atlanta Is Liable For Count IV As The Defendant Failed To Provide An Adequate Post-Deprivation Remedy For Plaintiff's Property Loss And Is Deliberately Indifferent To Pervasive Property Loss Perpetrated By Atlanta City Police Officers

Once seized — both intentional and negligent deprivation of property by a state employee violates the due process clause of the Fourteenth Amendment when the state refuses to provide a suitable post-deprivation remedy.[46] Post deprivation remedies fail to satisfy due process where the deprivation is caused by conduct pursuant to established procedure, rather than random and unauthorized action.[47]

Here, Plaintiff attempted to report the loss of the scooter to law enforcement multiple times that night following the deprivation but was prevented in part by Defendants. Plaintiff then made repeated attempts to report the deprivation of property to the OPS, despite Defendants FNU effort to the contrary. The same

---

[46] *Hudson v. Palmer*, 468 U.S. 519, 534 (1984).
[47] *Id.* at 532 (citing *Logan v. Zimmeran Brush Co.*, 455 U.S. 422 (1982)).

Defendant who misled and frustrated Plaintiff's initial attempts to file a report, was ironically tasked to investigate Plaintiff's complaint in order to provide post-deprivation relief. To date, Plaintiff has not received a remedy at law despite following the post-deprivation remedy outlined and implemented by Defendant City in conjunction with Defendant Rodney Bryant, the chief policymaker. As Plaintiff's property deprivation is part of a wider complex scheme of violations, whether Georgia provides adequate state law on this isolated claim is immaterial.

Alternatively, Defendant City is liable for Count IV as the fact shows at least forty-six other instances of property or evidence misconduct over a three-year span with countless complaints left uninvestigated or misclassified, which implores the need for continued discovery. Plaintiff alleges a materially similar pattern of deliberate indifference to property deprivation by noting an instance where an officer negligently lost the wallet of an arrestee in another matter similar to the loss of Plaintiff's scooter.[48] APD officers routinely deprive citizens of property without recourse, which is a ratification of the conduct by Defendant City. Moreover, City is liable as the events make obviously clear that officers need training with regard to property destruction and preservation in real-world application even if proper APD policies exists. While the need for discovery is

---

[48] *Id.* at 26 ¶ 140.

apparent to reveal further evidence of Defendant's nonfeasance, on its face Defendant has failed to address the systemic loss of citizens' property by APD.

F. **Defendants Are Liable For Counts V & VI, As Failure To Transport Plaintiff To The Hospital And Interfering With Plaintiff's Attempts At Transport Was An Inhumane Act Of Deliberate Indifference That Clearly Demonstrates The Need For Training Is Obvious.**

While the Defendants' critique of Plaintiff's two Eighth Amendment claims is true in form—it does little to substantively change their position as the Eleventh Circuit applies the Eighth Amendment deliberate indifference test to pretrial detention treatment cognizable under the Fifth[49] and Fourteenth Amendments.[50] Nevertheless, as a pretrial detainee, for Plaintiff to establish a claim for deliberate indifference one must show: (1) subjective knowledge of a serious harm, (2) that was disregarded, and (3) the conduct was more than mere negligence.[51] Supervisors are liable when there is a causal link between the constitutional injury and their supervising.[52]

Here, Defendants conduct caused Plaintiff's injury, and thus they were undoubtedly aware of the seriousness posed by the head and neck trauma

---

[49] *Marsh v. Butler County*, 268 F.3d 1014, 1024, 1028-34 (11th Cir. 2001) (en banc).
[50] *Cook v. Sheriff of Monroe County*, 402 F.3d 1100, 1115 (11th Cir. 2005) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994).
[51] *Cagle v. Sutherland*, 34 F.3d 983, 987 (11th Cir. 2003) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).
[52] *Belcher*, 30 F.3d 1397-98.

suffered.[53] Defendants showed a conscious disregard for the health and well-being of Plaintiff when they refused to arrange transport despite Plaintiff's complaints; and failed to adhere to the advice of their own medic who stated Plaintiff needed further evaluation. Then in acts of sadistic cruelness—far beyond the standard of negligence—Defendants intentionally interfered with Plaintiff's attempts to arrange his own transport to the hospital over the course of two hours. Defendants in Count V are liable for the deliberate indifference to Plaintiff's injuries in violation of clearly established law.

Defendant City is liable for count VI as the facts demonstrate an obvious need for training with regard to rendering aid to injured arrestees. At least five officers and two supervising officers failed to uphold a basic APD policy.[54] In addition to the outrageous single-event conduct, City is liable as Plaintiff alleges a *defacto* pattern whereby APD officers fail to render aid, which proper discovery will show is systemic, as the complaint notes another instance in which officers denied medical treatment and failed to take pictures of injuries.[55] The pattern of deliberate indifference warrants further investigation in discovery at minimum.

### G. Defendants Are Liable For Counts VII & IXX As The Seizure And Arrest Of Plaintiff Was Unlawful Because It Lacked Probable Cause And Officers Failed To Conduct A Reasonable Inquiry

---

[53] Pl's Compl. at 11, 18-19 ¶¶ 58-60, 110.

[54] *Id.* at 27, 29 ¶¶ 145, 150.

[55] *Id.* at 34 ¶ 192.

Reasonable suspicion allows an officer to conduct a brief investigatory stop that may lead to the requisite probable cause to make an arrest—or to the conclusion after **reasonable inquiry** that no crime was committed at all.[56] Officers cannot disregard easily discoverable facts, or turn a blind eye to available exculpatory information during a reasonable inquiry.[57] As probable cause requires a greater certainty of criminal behavior than reasonable suspicion: minimally intrusive *Terry* stops of innocent people are collateral to the alternative "drastic police action [where] persons [are] arrested and detained on probable cause to believe they have committed a crime [and] turn out to be innocent."[58]

Here, Defendants lacked time to establish reasonable suspicion let alone probable cause as Defendant FNU Wadsworth immediately began his prohibited verbal assault and destruction of evidence seconds after coming into contact with Plaintiff.[59] Assuming for mere arguendo that Defendants possessed reasonable suspicion to perform and investigatory stop following the *de minimis* contact: there

---

[56] *United States v. Gordon*, 231 F.3d 752, 753-56 (11th Cir. 2000); *see also United States v. Jones*, 752 Fed. Appx. 811, 813 (11th Cir. 2018) (the quantum and reliability of evidence matters in determining reasonable suspicion).

[57] *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004).

[58] *Illinois v. Wardlow*, 528 U.S. 121, 126 (2000) (holding that once seized, during the brief investigation: "**If the officer does not learn the facts rising to the level of probable cause, the individual must be allowed to go on his way**.").

[59] Pl's Compl. at 17 ¶ 102.

was virtually no reasonable inquiry or investigation done. Questioning did not occur, and no inquiry into the contact was done prior to arrest. Defendant John Doe 1 did not even have time to turn on his body camera—which should have been activated. The seconds between contact and FNU Wadworth's arrest rendered performing an investigatory *Terry* stop impracticable. Defendants lack of probable cause also manifested in the inability to inform Plaintiff, as mandated by APD policy,[60] of the charges—before Defendants FNU Wadsworth, Defendant Jane Doe 1, and Defendant John Doe 2, turned to their superior officer in an attempt to pacify Plaintiff into forgoing his right to report them.

Opposing counsel asserts solely *de minimis* contact with Defendant FNU Wadsworth[61] in a sea of thousands on a hill with a history of causing injury[62] coupled with an unnamed beverage in Plaintiff's possession constitutes probable cause to arrest Plaintiff in a mere matter of seconds. Beyond Defendant FNU Wadsworth brazen misconduct—Defendants' actions following the gratuatious use of force stand in stark contradiction to the narrative presented. Defendants asks this Court to simultaneously accept Plaintiff posed such a threat to warrant a violent arrest and three charges, but not enough of a danger to the public—while

---

[60] *Id.* at 17 ¶ 103.
[61] Opposing counsel infers Plaintiff "collided" with Defendant, where the possibility exists FNU Wadsworth initiated contact while Plaintiff was in motion.
[62] *Id.* at 9 ¶ 43.

allegedly under the influence and refusing to obey lawful orders — to remain in custody such that Defendants released the injured and property deprived Plaintiff back out into the festival almost immediately after issuing the citation. Defendants were intent on a malicious cover-up after injuring Plaintiff in contravention of clearly established law.

Moreover, Defendants are liable for Count XX as they lacked probable cause and exhibited a gratuitous show of force in contravention of clearly established law. Defendants, no longer shielded by qualified immunity, committed the intentional torts of assault and battery under Georgia and common law.

Defendant of Atlanta is liable for **Count VIII** as the facts demonstrate the clear need for additional training as relates to the investigation that officers are obligated to perform accompanying affirmative acts stemming from a special relationship. Here, not only did FNU Wadsworth fail investigating, but was successful in eliciting the help of no less than five other APD officers to forgo any semblance of reasonable police work in violation of clearly established law.[63] None of the Defendants involved showed the good conscious to pick up the evidence FNU Wadsworth blatantly disregarded, ask Plaintiff questions, or otherwise assist in the investigation. Neither supervisor ensured minimum investigative standards

---

[63] John Doe 4 and John Doe 5 appeared after Plaintiff's citation and release.

were followed. Plaintiff alleges a pattern of similar conduct as the complaint notes

another instance in which officers engaged in a false arrest.[64]

### H. Defendants Are Liable For Counts XI, XII, XIII, IVX For Failure To Investigate Plaintiff's Property Loss As A Special Relationship Established An Affirmative Duty To Act By Officers And Investigators

A police officer in a position to intervene,[65] whether supervisory or not, that

fails or refuses to intervene when a constitutional violation takes place, is liable

under section 1983.[66] An affirmative duty arises when a special relationship exists:

(1) between the victim and the criminal; or (2) between the victim in the state.[67]

Although four separate causes of action, Counts XI through IVX are discussed

collectively for clarity. Here, the first special relationship existed with Defendant

officers. Both prongs are present to establish Defendants' affirmative duty to

investigate Plaintiff's property loss as APD officers were both the perpetrators of

the offense and custodian of Plaintiff while detained. Officers were on-duty and

in the area during six calls for emergency assistance, totaling dozens of minutes,

and Defendant John Doe 4 implicates John Doe 3 as intentionally refusing to

---

[64] Pl's Compl. at 54 ¶ 297.

[65] *Ensley v. Soper*, 142 F.3d 1404, 1407 (11th Cir. 1998); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (two minutes was enough time for a jury to conclude an officer had the capacity to intervene in a dog attack).

[66] *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *see also Salvato v. Miley*, 790 F.3d 1286 (11th Cir. 2015).

[67] *Ensley*, 142 F.3d 1406.

respond. Defendants argue that police have no duty to fulfill their basic responsibility to respond to 911 calls even when officers are aware of the need for help or a possible crime. By multiple officers repeatedly not responding to Plaintiff's calls for assistance, they obviously violated the most fundamental principle of their charter given their lawless conduct created the emergency they purposely ignored.

The second special relationship giving rise to Count XIII existed between Plaintiff and Defendants Gartrell Walton (hereinafter "Walton") and FNU Battles. Plaintiff emailed Walton evidence, met with Walton, and arranged to follow-up with Walton. Plaintiff relied on Walton's assurances. Plaintiff's repeated contacts coupled with Defendants duty to investigate show a nexus between Plaintiff and the state sufficient to form a special relationship and create an affirmative duty.

Defendant City is liable for **Counts XII and IVX** as the facts show a special relationship exists it can give rise to an affirmative duty to act when: (1) promises or actions by the municipality gives assurance that it will act on behalf of the aggrieved party; (2) knowledge that inaction would lead to harm; and (3) the injured party justifiably and detrimentally relied on the city's affirmative duty.[68]

---

[68] *City of Rome v. Jordan*, 263 Ga. 26, 29 (1993).

Here, APD policy dictates that officers are to preserve the property of the detained, which is an explicit assurance by the Defendant City that property during the course of the arrest would be returned. Moreover, it is implied by the nature of the interaction that Defendants would return Plaintiff's property. City is aware that inaction could lead to harm as Defendant City, in conjunction with Chief Rodney Bryant delegated, authority to OPS to conduct investigations. The purpose of OPS is to provide those that have suffered misconduct with recourse. City is also liable as the single event demonstrates the need for training as it relates to the duty to investigate when an affirmative duty arises is obviously clear. Also, Counts XII and IVX failure to investigate Plaintiff's property loss will be shown in discovery to be part of a larger widespread pattern, evidenced by the number of investigations that remained open or miscategorized. City's holding out of OPS, and Plaintiff's attempts to file a claim in person, online, and over the phone demonstrate justifiable and detrimental reliance on Defendant City to provide redress created a special relationship.[69]  City is also liable as the failure to respond by officers should make it obviously clear the need for training is apparent.

I. **Defendants Are Liable For Counts XV And XXI As Prosecution Of Plaintiff Was Born Out Of Malicious Retaliatory Animus To Punish Plaintiff For Reporting Defendants' Unlawful Misconduct.**

---

[69] Pl's Compl. at 12-14 ¶¶ 70-81.

A claim for malicious prosecution accrues upon prosecutors' unilateral dismissal of the charges and it violates clearly established law for an officer to make false statements in an arrest affidavit or omit information with reckless disregard for the truth.[70]   Recklessness occurs when the officer should have recognized the error or harbored serious doubts about the information.[71] Discussion will be limited to the fourth, subjective intent element of malice as Plaintiff has shown the lack of probable cause and the other elements outlined in Defendants' motion are not in dispute.[72] The facts show citation issuance, based solely on the arrest affidavit by FNU Wadsworth, was only after a compromising conversation with John Doe 2. Opposing counsel's argument conveniently ignores the affiant's omission of the *quid pro quo* where Defendants attempted to extort Plaintiff's unlawfully deprived Fourth Amendment freedom in exchange for silencing his First Amendment right to report their conduct—all while Plaintiff's liberty was coercively restrained prior to being retaliatorily charged.[73] The arrest report also admits all of FNU Wadworth's malfeasance prior to the arrest. All Defendants are liable for the malicious prosecution of Plaintiff as their actions, in

---

[70] *Laskar v. Hurd,* 972 F3.d 1282, 1285, 1298 (11th Cir. 2020); *see also Paez v. Mulvey,* 915 F.3d 1276, 1287 (11th Cir. 2019) (holding intentional or reckless omissions in an arrest affidavits constitute Fourth Amendment violations).
[71] *United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986).
[72] Def.'s Mot. at 6, EFC No. 10.
[73] Pl's compl. at 7-8 ¶¶ 31-35.

concert, gave rise to FNU Wadsworth's report, in which they are referenced. Only discovery can gauge whether FNU Wadsworth acted alone or if his co-Defendants were instrumental in the arrest affidavit and prosecution.

Defendant City is liable for **Count XVI** as the maliciousness of the prosecution of Plaintiff clearly demonstrated training is wholly inadequate because officers' abhorrent willingness to use their authority and the criminal justice system as a tool to wreak havoc on Plaintiff for merely daring to hold them accountable. The participation of two supervisors in the scheme demonstrates a clear causal link directly with Defendant City. A pattern of retaliatory charging or overcharging is alleged as Plaintiff notes another instance where one officer threatened to charge an innocent citizen for reporting misconduct of another fellow officer.[74] The egregiousness of alleged pattern warrants discovery to corroborate.

## J. City Is Liable For Counts XVII For Deliberate Indifference To The Widespread Misuse Of Body Cameras By Officers And OPS Investigators

Count XVII combines Defendant officers' failure to retain body camera footage which resulted to the spoliation of evidence with investigators' nonfeasance on the matter. Under Georgia law, body camera footage showing the detention of an arrestee is to be preserved for 30 months from the date of the

---

[74] *Id.* at 41-42 ¶ 233.

recording,[75] and **alienation or destruction is a misdemeanor.[76]** As the agency head, Chief Bryant is responsible for ensuring adequate training, procedures, and safeguards to ensure APD compliance with record retention laws.[77] Prohibited spoliation is the destruction of evidence when litigation is foreseeable, and Georgia law does not require a showing of malice.[78]

Here, APD policy mandates officers have body cameras on functional, active, and recording when interacting with the public; however, no less than seven Defendants failed to ensure compliance.[79] The failure to tag and upload the exculpatory footage, alienated the evidence as it relates to Plaintiff's prosecution.[80] If the seven officers that flouted the rules in Plaintiff's arrest is a reflective sampling then APD officers that adhere to the video retention policy are likely the exception. Potential widespread and pervasive spoliation of body camera evidence by officers in Georgia's largest municipality as alleged here is undoubtedly a subject in want of judicial review.

Although the relatively new advent of body cameras makes for a novel set of facts, Defendant City is liable for **Count IIXX**, as the facts demonstrate an

---

[75] O.G.C.A.50-18-96(1) (2016).
[76] O.G.C.A 50-18-102(c) (2016).
[77] O.G.C.A 50-18-95(a) (2016); *see generally* O.G.C.A. 50-18-94 (2016).
[78] *Flury v. Daimler Chrysler Corp*, 427 F.3d 940, 943-46 (11th Cir. 2005).
[79] Pl's Compl. at 58-59. ¶¶ 314-22.
[80] *Id.* at 10, 60-61 ¶¶ 51-57, 323-335.

obviously clear need for training as relates to body camera usage, specifically as relates to preservation of evidence. The loss or spoliation of mounds of exculpatory evidence amounted to criminal conduct. The Defendant City negligent training with regard to both officers, and OPS has allowed for the very pattern of constitutional abuses by officers that afflicted Plaintiff—which likely continues through the present day. It would undoubtedly draw the ire of any court for the state to fail to preserve dash cam footage from a stop where a citizen was forceable apprehended in a traffic stop. Yet, here opposing counsel offers no explanation for the glaring violation in failing to preserve evidence. With the material omissions in the sworn arrest report coupled with destruction of the BFC the officers' cover-up was nearly complete—and save for this action, they would have gotten away with it. Only discovery will uncover whether the missing body camera footage stills exists, which failed to make it into either the prosecutor's discovery file or OPS investigation.[81]

### K. Plaintiff Has Plead Sufficiently to Ascertain Their Identifies Of John/Jane Does Through Discovery And Refusal By Officers To Reveal Their Identify Constitutes An Exceptional Circumstance.

One must allege facts sufficient to ascertain fictitious parties through reasonable discovery, or present an exceptional circumstance.[82] Here, both are

---

[81] Pl's Compl. at 15, 52 ¶¶ 95 285.
[82] *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992).

present. The complaint contains sufficient specificity to ascertain the unknown parties' identities through discovery in order to provide service of process at that time. Defendants Jane Doe, the only female officer who seized Plaintiff's scooter, and John Doe 1 can be identified by BCF, FNU Wadsworth's testimony, and Plaintiff's photograph.[83] Supervisors John Does 2 & 3 and John Does 4 & 5 can be ascertained via: BCF, staffing schedules, deposition testimony, electronically stored information, dispatch calls—and other evidence collected in discovery.[84]

Under the novel facts, Defendants' actions birthed the exceptional circumstance and need to plead the conduct of the unknown officers by refusing to give their badge numbers or names.[85] Opposing counsel is dubiously asking this Court to shield officers from any judicial oversight by nascently endorsing the misconduct which led to their anonymity. The exceptional facts alleged shows inclusion of fictitious parties is not only proper, but necessary for judicial review.

Finally, Plaintiff has no objection to forgoing the less strenuous *pro se* standard of review as an attorney admitted to the Southern District of Iowa.

/s/

Justin T. Tolston, JD LLM
Plaintiff

---

[83] Pl's Compl. at 14 ¶ 83.
[84] *Id.* at 10 ¶¶ 52-54.
[85] *Id.* at 36 ¶¶ 201-02.



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 4 2020

JAMES N. HATTEN, Clerk
By:                Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JUSTIN T. TOLSTON,                          )
               Plaintiff,                  )
                                )
v.                                          )      No.  1:20-CV-4221-MLB
                                )
CITY OF ATLANTA GEORGIA, et. al.            )
               Defendants.                 )

## PLAINTIFF'S MOTION IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff to submit this response to Defendants' partial motion to

dismiss counts of Plaintiff's original complaint pursuant to Fed. R. Civ. P.

12(b)(6). Defendants motion to dismiss **Counts I, II, III, IV, VII, VIII, XI, XII,**

**XIII, IVX, XV, XVI, XVII, IIXX, IXX, XX, & XXI** should be **DENIED**.

In the interest of justice, *sua sponte*, this Court may grant leave to allow

Plaintiff to amend **Counts V & VI** so the claims can be vetted on the merits while

preserving Plaintiff's sole amendment as a matter right.

For the reason outlined in Plaintiff's memorandum of law, this Court

should **RESERVE JUDGEMENT** on **Counts V & VI,** and Defendants' 12(b)(6)

motion to dismiss should be **DENIED** on **Counts I, II, III, IV, VII, VIII, XI, XII,**

**XIII, IVX, XV, XVI, XVII, IIXX, IXX, XX, & XXI.**

Alternatively, this Court should **RESERVE JUDGEMENT** on all counts

pending discovery.

/s/ Justin T. Tolston

Justin T. Tolston, JD LLM
7925 Meredith Avenue
Omaha, Nebraska 68134
Plaintiff

2