## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Justin T. Tolston,

                Plaintiff,

                              Case No. 1:20-cv-4221-MLB

v.

City of Atlanta Georgia, et al.,

                Defendants.

_____/

## <u>ORDER</u>

This case arises out of Plaintiff Justin T. Tolston's arrest at a festival in Piedmont Park. Plaintiff claims he was falsely arrested, beaten, deprived of his property, denied medical treatment, retaliated against, maliciously prosecuted, and ignored when he complained about his mistreatment. Plaintiff asserts these claims in a 21-count pro se complaint against Defendants City of Atlanta Georgia, Police Chief Rodney Bryant, Officer FNU Wadsworth, Officers John Doe 1–5, Officer Jane Doe 1, Investigator FNU Battles, and Investigator Gartrell Walton. Defendants now move to dismiss the bulk of Plaintiff's claims. (Dkt. 10.) The Court grants Defendants' motion in part and denies it in part.

## I.    Background

On October 14, 2018, Piedmont Park hosted a festival attended by thousands of people and hundreds of vendors.  (Dkt. 1 ¶¶ 15, 36.)  Several City of Atlanta police officers were also there, including Defendants Wadsworth, John Doe 1–5, and Jane Doe 1.  At about 7 p.m. that night, "the shoulder of [Defendant] Wadsworth and the shoulder of Plaintiff made *de minimis* contact as Plaintiff was walking in a crowd of thousands of fellow festival attendees."  (Dkt. 1 ¶ 15.)  Defendant Wadsworth cursed, took Plaintiff's drink, and emptied it onto the ground.  (Dkt. 1 ¶¶ 16–17, 20.)  He then "grabbed" Plaintiff, "slammed [him] to the ground on his head and neck," and handcuffed him.  (Dkt. 1 ¶¶ 21, 395.)  Plaintiff briefly lost consciousness as a result.  (Dkt. 1 ¶ 22.)  Plaintiff was never told he was under arrest, told to put his hands behind his back, or given any other lawful command.  (Dkt. 1 ¶¶ 23–24.)

After the arrest, Defendant Jane Doe 1 seized Plaintiff's electric scooter and took him to see Defendant John Doe 2 (a sergeant).  (Dkt. 1 ¶¶ 30–32.)  The sergeant offered to release Plaintiff if he agreed not to file a complaint.  (Dkt. 1 ¶ 33.)  Plaintiff explained what had happened, said he could not stay silent about it, and requested the badge numbers

of the officers involved.  (Dkt. 1 ¶¶ 34–35.)  The sergeant ultimately "authorized Plaintiff's continued detention and citation."  (Dkt. 1 ¶ 35.)

Defendant Wadsworth and two other officers (John Doe 1 and Jane Doe 1) then escorted Plaintiff to a pavilion at the park.  (Dkt. 1 ¶ 36).  Plaintiff asked for medical attention along the way.  (Dkt. 1 ¶ 37.)  He said he felt "excruciating" pain in his head and neck.  (Dkt. 1 ¶ 38.)  He repeated his request when they arrived at the pavilion.  (Dkt. 1 ¶ 41.)  Plaintiff was eventually seen by an on-site medic.  (Dkt. 1 ¶ 42.)  The medic concluded Plaintiff needed further evaluation.  (Dkt. 1 ¶ 44.)  Plaintiff asked for transportation to the hospital.  (Dkt. 1 ¶ 44.)  The officers ignored his request.  Instead, they cited him for disorderly conduct while under the influence, prohibited conduct in a park, and physical obstruction of another.  (Dkt. 1 ¶¶ 47, 49.)  They then said he was free to leave.  (Dkt. 1 ¶ 48.)  They did not return his scooter.  (Dkt. 1 ¶ 50.)

Plaintiff eventually called 911 himself, requesting an ambulance and reporting the loss of his scooter.  (Dkt. 1 ¶¶ 51, 55, 185.)  One of the officers at the pavilion (John Doe 4) told dispatch to cancel Plaintiff's request.  (Dkt. 1 ¶ 52.)  So Plaintiff called 911 again.  (Dkt. 1 ¶ 53.)  This

time another officer (John Doe 5) told dispatch, "Sargent knows about him and he doesn't need a squad."  (Dkt. 1 ¶ 54.)  Plaintiff called 911 another four times that night without success.  (Dkt. 1 ¶ 55.)

At some point, a nearby officer told Plaintiff to call 911 from outside the park "so dispatch would not route the call to the same officers."  (Dkt. 1 ¶ 56.)  Plaintiff tried that approach and it worked.  (Dkt. 1 ¶ 57.)  A fire truck picked him up from outside the park and took him to Grady Hospital, where he was diagnosed with traumatic brain injury.  (Dkt. 1 ¶¶ 57–58.)

The next day, Plaintiff called the City of Atlanta's Office of Professional Standards ("OPS") and spoke with Defendant Walton, an investigator there.  (Dkt. 1 ¶ 70.)  Plaintiff said he wanted to file an complaint against the officers involved in his arrest.  (Dkt. 1 ¶ 70.)  Defendant Walton said he could only file a complaint in person.  (Dkt. 1 ¶ 72.)  Plaintiff did so on November 5, 2018.  (Dkt. 1 ¶ 81.)  He also provided supporting documentation.  (Dkt. 1 ¶¶ 82–84.)  Despite following up, Plaintiff never received any information about the status of his complaint.  (Dkt. 1 ¶¶ 85–87.)  Plaintiff's citations were ultimately consolidated into a single charge and dismissed.  (Dkt. 1 ¶¶ 92, 99.)

In October 2020, Plaintiff filed this lawsuit asserting federal claims under 42 U.S.C. § 1983 for excessive force (Counts 1–2), deprivation of property (Counts 3–4), deliberate indifference to Plaintiff's medical needs (Counts 5–6), false arrest (Counts 7–8), First Amendment retaliation (Counts 9–10), failure to investigate Plaintiff's loss of property (Counts 11–12), failure to investigate Plaintiff's OPS complaint (Counts 13–14), malicious prosecution (Counts 15–16), and negligent hiring/failure to supervise and train (Counts 17–18).  Plaintiff also asserts Georgia law claims for false arrest (Count 19), assault and battery (Count 20), and malicious prosecution (Count 21).  Defendants move to dismiss Counts 1–8, 11–14, 19, and 21 for failure to state a claim.  Defendants also move to dismiss the Doe Defendants under the rules governing fictious party pleading.

## II.  Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this plausibility determination, the court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010). But the court need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). "[L]abels and conclusions" are disregarded, and "formulaic recitation[s] of the elements of the cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III. Discussion

### A.   Doe Defendants

Defendants claim Defendants John Doe 1–5 and Jane Doe 1 should be dismissed under the rules governing fictitious party pleading. (Dkt. 10 at 22–23.) The Court agrees.

6

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is only one "limited," "narrow" exception to this rule. *Id.*; *Kabbaj v. John Does 1-10*, 600 F. App'x 638, 641 (11th Cir. 2015). "[P]laintiffs [can] sue real parties under fictitious names only when use of a 'John Doe' label is, at the very worst, surplusage because the plaintiff's description of the defendant is sufficiently clear to allow service of process." *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020). So, for example, plaintiffs can sue a Doe defendant described as the "Governor of Alabama" or the "Chief Deputy of the Jefferson County Jail" because those descriptions identify a specific position occupied by only "*one* person." *Smith v. Comcast Corp.*, 786 F. App'x 935, 940 (11th Cir. 2019); *Dean v. Barber*, 951 F.2d 1210, 1216 & n.6 (11th Cir. 1992). That is, the descriptions "*necessarily* pick out one" person for service. *Smith*, 786 F. App'x at 940 (emphasis added). In contrast, descriptions that rely on "vague, widely-shared characteristics," "general physical attributes," or "a title that is held by many individuals," are not enough. *Id.*; *Vielma*, 808 F. App'x at 880. It is insufficient, for example, to describe a Doe defendant as (1) "a female white officer about 5 feet 10–11 inches in

height"; (2) a "Guard" at the "Charlotte Correctional Institute"; or (3) "a white male [area supervisor at Comcast] with grey hair, a long mustache and a mother of pearl shark's tooth earring." *Vielma*, 808 F. App'x at 880; *Smith*, 786 F. App'x at 937, 940.

Plaintiff's description of the Doe Defendants falls squarely into the generic category. Plaintiff identifies them as "police officer[s] for the City of Atlanta" or "police Sergeant[s] for the City of Atlanta." (Dkt. 1 ¶¶ 6–11.) These descriptions apply to lots of people. So they are not enough. A process server would have no idea who to serve based on this or any other information in the complaint. See *Vielma*, 808 F. App'x at 880 (dismissing Doe defendants because their "descriptions . . . . fall well short of enabling a process server to identify a specific individual").

Plaintiff insists "[t]he complaint contains sufficient specificity to ascertain the unknown parties' identities *through discovery*." (Dkt. 13 at 25 (emphasis added).) And he is probably right. But the Eleventh Circuit "has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity." *Vielma*, 808 F. App'x at 880. "Instead, [Circuit] precedent has always required an unambiguous description of a defendant that enables service of process."

*Id.* Plaintiff's "sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court." *Id.* at 881. Maybe he can identify the John Does and Jane Doe through discovery of his surviving claims and maybe he can then assert claims against those people. But he cannot assert claims now and hope to find a defendant later. The Court dismisses Defendants John Doe 1–5 and Jane Doe 1.[1]

## B.    Count 1 (Excessive Force)

Count 1 asserts a Fourth Amendment claim for excessive force against Defendant Wadsworth. (Dkt. 1 ¶¶ 100–112.) Defendants says qualified immunity bars that claim. (Dkt. 10 at 10–11.) The Court disagrees.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates*

---

[1] Notably, "Plaintiff[] did not seek discovery to identify the unnamed defendants." *Vielma*, 808 F. App'x at 881. Plaintiff did not even oppose Defendants' motion to stay discovery (Dkt. 16) even after Defendants moved to dismiss the Doe Defendants for insufficient identification. *Vielma*, 808 F. App'x at 881 (dismissing John Doe defendants including because plaintiffs "agreed to stay discovery that they acknowledged was necessary to identify the John Does").

*v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018).  An official asserting this defense must show that he [or she] "engaged in a discretionary function when he [or she] performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  The burden then "shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.*  This requires the plaintiff to show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*  To make this showing, plaintiff must demonstrate "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that every reasonable official would have understood that what he [or she] is doing violates the Constitutional right at issue." *Gates*, 884 F.3d at 1302.  "The critical inquiry is whether the law provided [defendants] with fair warning that their conduct violated the [Constitution]." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). "It is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

Plaintiff does not—and could not—dispute that Defendant Wadsworth acted within his discretionary authority when he forcibly arrested Plaintiff at Piedmont Park. *See Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338 (11th Cir. 2020) (officer acted within discretionary authority in excessive force case because "he performed the takedown while on duty as a police officer conducting investigative functions"). So, to avoid qualified immunity, Plaintiff must show Defendant Wadsworth's actions violated clearly established law under the Fourth Amendment. He has done so.

The Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Patel*, 959 F.3d at 1343. According to Plaintiff, that is exactly what happened here. Plaintiff never yelled, used profane language, threatened the officers, or provoked them. (Dkt. 1 ¶¶ 21–24, 68, 205–206.) He never refused a lawful command. (Dkt. 1 ¶¶ 23–24.) Nothing suggests he had a weapon, was physically aggressive, or tried to flee. And he was never charged with resisting arrest. (Dkt. 1 ¶ 68.) Drawing all reasonable inferences in

Plaintiff's favor and accepting his factual allegations as true for the purpose of assessing Defendants' motion to dismiss, Plaintiff simply stood there as Defendant Wadsworth cursed at him and seized his drink (after some minor shoulder contact in a large crowd). Then, "[w]ithout warning or provocation," Defendant Wadsworth "grabbed" him and "slammed [him] to the ground on his head and neck" with enough force that he suffered "traumatic brain injury." (Dkt. 1 ¶¶ 21, 58, 395.) This constitutes "gratuitous force against a docile suspect." *Patel*, 959 F.3d at 1343. And that bars qualified immunity. *Id.* The Court allows Count 1 to proceed against Defendant Wadsworth. *See, e.g.*, *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326 (11th Cir. 2017) (no qualified immunity where "forceful chest blows" and "throwing [plaintiff] against the car-door jamb" were "unnecessary for a compliant, nonaggressive arrestee"); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (noting that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," and denying qualified immunity to an officer who punched a handcuffed, compliant suspect in the stomach).

## C.    Count 2 (Excessive Force)

Count 2 asserts a Fourth Amendment claim for excessive force against Defendant City of Atlanta.  (Dkt. 1 ¶¶ 113–120.)  Defendants say the claim fails because Plaintiff has not "allege[d] any custom or policy of the City which caused a constitutional violation of his Fourth Amendment right."  (Dkt. 10 at 12.)  The Court agrees.

"To establish municipal liability under § 1983, a plaintiff must show that: (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) the policy or custom caused the violation." *Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 999 (11th Cir. 2018). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Kraus v. Martin Cty. Sheriff's Office*, 753 F. App'x 668, 674 (11th Cir. 2018).  "[A] custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "[T]he custom or policy must be the 'moving force' behind the constitutional deprivation for there to be sufficient causation." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (citing *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 690–94). "[T]he bar to establish municipal liability is very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). Ultimately, the plaintiff "must show that the municipality has officially sanctioned or ordered the action causing the alleged injury." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019).

Plaintiff claims the City has "a custom and practice of unlawfully using force against people in their custody and during arrest." (Dkt. 1 ¶ 114.) In support, he points to (1) three other allegations of excessive force against the City; (2) OPS reports identifying 22 complaints of unauthorized force in 2017 and 20 such complaints in 2018; and (3) Plaintiff's own arrest. (*See* Dkts. 1 ¶¶ 115–117, 349–354; 13 at 6–9.) But none of these things—either alone or in combination—plausibly alleges a custom of excessive force at the City.

As to his first point, two of the three incidents resulted in *exoneration* of the officer accused. (Dkt. 1 ¶¶ 116–117.) The third arose from a May 2020 incident, which postdates Plaintiff's arrest by about 19 months. (Dkt. 1 ¶ 115.) So it tells us little about the City's customs at the time that matters here. *See Whittington v. Town of Surfside*, 269 F.

14

App'x 918, 922 (11th Cir. 2008) ("[T]he referenced news article from September 2006, which was a year and a half after the February 2004 incident here, does not support Whittington's claim that there was such a policy or custom . . . in February 2004.").[2]

Plaintiff's second point relies upon 42 allegations of excessive force against the City in 2017–2018.  But the Eleventh Circuit has held that *170 complaints* over a two-year period is insufficient to establish a custom of excessive force.  *See Ludaway v. City of Jacksonville, Fla.*, 245 F. App'x 949, 951–52 (11th Cir. 2007) (no custom of excessive force where "between January 2004 and December 2005, there were over 170 complaints to the JSO alleging that its officers used excessive force").  So the amount alleged here is too low as a matter of law.  Plaintiff also never says how many of the 42 excessive force complaints were sustained.  He does identify the percentage of *all* complaints (including non-excessive-force complaints) sustained against the City.  (Dkt. 1 ¶¶ 351, 354.)  But even assuming this percentage applied to excessive force complaints specifically, it would only yield about 10 sustained complaints over a two-

---

[2] Plaintiff's citation to other 2019 data fails for the same reason.  (*See, e.g.*, Dkt. 1 ¶¶ 355–361.)

year period.[3]   The Eleventh Circuit has said this number of sustained claims is insufficient to establish a custom of excessive force.   *See Ludaway*, 245 F. App'x at 951–52 (no excessive force custom where "only 10 of th[e] claims of excessive force were sustained" over a two-year period).   Five incidents per year does not reveal a practice "so pervasive as to be the functional equivalent of a formal policy." *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014); *see Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) ("To establish the existence of a custom, the plaintiff must show a longstanding and widespread practice.").   So, again, his allegation fails as a matter of law.

As to his final point, Plaintiff says "the multiple failures by officers in the *single event* of Plaintiff's arrest" is enough to show a custom here. (Dkt. 13 at 9 (emphasis added).)   He is wrong.   "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).   "Considerably

---

[3] In 2017: (22 excessive force complaints) x (total sustaining rate of 28.84%) = 6 sustained excessive force complaints.   (*See* Dkt. 1 ¶¶ 350–351.)   In 2018: (20 excessive force complaints) x (total sustaining rate of 19.22%) = 4 sustained excessive force complaints.   (*See* Dkt. 1 ¶¶ 353–354.)   Overall: 6 + 4 = 10 sustained excessive force claims in 2017–2018.

more proof is necessary." *Marantes*, 649 F. App'x at 672; *see Wilk v. St. Lucie Cty. Fla. Sheriff Off.*, 740 F. App'x 658, 662 (11th Cir. 2018) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy."). The Court dismisses Count 2 for failure to plead a policy or custom—adopted with "the requisite degree of culpability"— that caused Plaintiff's injuries. *McDowell v. Brown*, 392 F.3d 1283, 1289, 91 (11th Cir. 2004).[4]

---

[4] Plaintiffs can establish municipal liability based on "a single incident" in rare cases where "local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Kraus*, 753 F. App'x at 675. This is known as the "ratification theory." *Id.* Plaintiff never invokes it explicitly. And, even if he had, the record does not support it. Plaintiff's brief also claims the City "financially hobbl[ed]" the OPS and the Atlanta Citizen Review Board, which are both responsible for investigating police misconduct. (Dkt. 13 at 8–9.) No doubt these entities—like all public entities—would benefit from more resources. But Plaintiff has not shown their resource allocation was constitutionally deficient at the time of his arrest. And, even if he had, he has not shown municipal liability would result here. Finally, Plaintiff repeatedly claims—in conclusory fashion—that the City "failed to effectively screen, train, supervise, discipline, and/or control the people it employs as police officers." (*See* Dkt. 1 ¶¶ 118, 141, 193, 214, 234, 273, 298, 309, 374.) "[M]unicipal liability . . . may be based on a claim of inadequate training where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants such that the failure to train can be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489–490 (11th Cir. 1997). But "plaintiff must present some evidence that the municipality knew of

### D.     Count 3 (Deprivation of Property)

#### 1.     Fourth Amendment

In Count 3, Plaintiff claims Defendant Wadsworth seized his drink and scooter in violation of the Fourth Amendment.  (Dkt. 1 ¶¶ 121–137.)  Defendants say this claim fails under the "plain view" doctrine and they are thus entitled to qualified immunity.  (Dkt. 10 at 12–13.)  The Court disagrees.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "A warrantless search or seizure is *per se* unreasonable under the Fourth Amendment unless it falls within one of several specifically established and well-delineated exceptions."  *United States v. Rivera*, 646 F. App'x 803, 804 (11th Cir. 2016).  "One such exception is the plain view doctrine."  *United States v.*

---

a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).  Plaintiff's complaint falls well short of pleading facts to meet this high standard.  Whatever the theory, and however you slice it, Plaintiff has not pled facts showing the City "officially sanctioned or ordered" Defendant Wadsworth's use of excessive force.  *DeMartini*, 942 F.3d at 1307 n.21.  That is fatal to Count 2.  *See id.*

*Stitzer*, 785 F.2d 1506, 1517 (11th Cir. 1986).  "The plain-view doctrine permits the warrantless seizure of an item where (1) the officer is lawfully located in the place from which the seized object could be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the incriminating character of the item is immediately apparent." *United States v. Coffell*, 720 F. App'x 521, 525 (11th Cir. 2017).  "For an item's incriminating character to be 'immediately apparent,' an officer merely needs probable cause to believe the item is contraband."  *United States v. O'Campo*, 381 F. App'x 974, 976 (11th Cir. 2010); *see United States v. Bell*, 588 F. App'x 875, 878 (11th Cir. 2014) ("The officers must have probable cause to believe that the object in plain view is contraband.").  "Probable cause exists when, under the totality of the circumstances, a fair probability exists that contraband or evidence of a crime will be discovered in a particular place."  *Bell*, 588 F. App'x at 878. There must be "a reasonable ground for belief of guilt."  *Id.*

There were no reasonable—or even *arguably* reasonable—grounds for believing Plaintiff's drink and scooter were contraband or incriminating evidence.  All Defendant Wadsworth knew was that (1) his shoulder "made *de minimis* contact [with Plaintiff's shoulder] as Plaintiff

was walking in a crowd of thousands of fellow festival attendees";
(2) Plaintiff was holding an unknown beverage at the time; and
(3) Plaintiff had a scooter in the area.  These facts were unremarkable
and likely described several other attendees at the same festival.
Defendants speculate that Plaintiff may have been drunk, his beverage
may have been alcohol, and he may have been to blame for the shoulder
contact with Defendant Wadsworth.  (Dkt. 10 at 13.)  But "[s]uch
speculation, without any factual support, will not suffice to overcome the
warrant requirement." *United States v. Lynch*, 934 F.2d 1226, 1233 (11th
Cir. 1991).  Defendants' speculation also runs counter to the complaint,
which says "Defendants did not have cause to cite Plaintiff with
disorderly conduct while under the influence," "prohibited conduct in a
park," or "physical obstruction of another."  (Dkt. 1 ¶¶ 386–388.)  The
plain view doctrine does not apply here because "the incriminating
character" of Plaintiff's drink and scooter was not "immediately
apparent."  In the absence of reasonable—or even arguably reasonable—
grounds for a warrantless seizure, Defendant Wadsworth is not entitled
to qualified immunity.  So the Court allows Count 3's Fourth Amendment
claim to proceed against Defendant Wadsworth.

## 2.   Fourteenth Amendment

Plaintiff also claims Defendant Wadsworth deprived him of his drink and scooter without due process in violation of the Fourteenth Amendment.  (Dkt. 1 ¶¶ 121–137.)  But, as Defendants point out, "[t]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property, so long as a meaningful post-deprivation remedy is available."  *Stickels v. Chief Police, Gwinnett Cty. Police Dep't*, 279 F. App'x 790, 791 (11th Cir. 2008). And "Georgia law provides an adequate postdeprivation remedy for a wrongful deprivation of property," namely, "a cause of action for conversion of property." *Pacesetter Apparel, Inc. v. Cobb Cty., Ga.*, 374 F. App'x 910, 912 (11th Cir. 2010); *see Stickels*, 279 F. App'x at 791 ("Stickels had an adequate state post-deprivation remedy for the failure of the police to return his property, *i.e.*, a state wrongful conversion claim."). "Plaintiff does not allege that he attempted to avail himself of the remedies available under Georgia law, nor does he allege that these remedies are not suitable or are otherwise unavailable."  *Williams v. Wilcox State Prison*, 2018 WL 3186962, at *3 (M.D. Ga. June 28, 2018) So the Court dismisses Count 3's due process claim.  *See id.*

### E.    Count 4 (Deprivation of Property)

In Count 4, Plaintiff claims the City is responsible for Defendant Wadsworth's seizure of his drink and scooter in violation of the Fourth and Fourteenth Amendments.   But the Court has already concluded these seizures did not violate the Fourteenth Amendment.   So Plaintiff's Fourteenth Amendment claim against the City is dismissed.   *See Taffe v. Wengert*, 775 F. App'x 459, 467 (11th Cir. 2019) ("Because Taffe has not established that Thompson's constitutional rights were violated, neither the supervisory liability claim nor the municipal liability claim can succeed as a matter of law."); *Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1120 (M.D. Fla. 2018) ("[A] *Monell* claim is derivative of—and thus requires—an underlying constitutional violation.").

The Court did allow Plaintiff's *Fourth* Amendment claim to proceed against Defendant Wadsworth for unlawfully seizing Plaintiff's drink and scooter.   But Plaintiff has not shown the City is responsible for these seizures because he has not shown they were caused by the City's customs or policies.   Plaintiff says the City has a "custom and practice of unlawfully us[ing] force to deprive property through the destruction or otherwise conversion of property without, compensation, use as evidence,

22

or meaningful due process." (Dkt. 1 ¶ 139.) But he cites even fewer complaints (sustained or otherwise) against the City in support of this custom than he did in support of the City's alleged excessive force custom. (*See* Dkts. 1 ¶¶ 140, 349–354; 13 at 12.) The Court has already concluded the excessive force complaints were insufficient to establish a custom. It follows that the lower number of property complaints is also insufficient. The Court dismisses Count 4.[5]

### F.     Counts 5–6 (Deliberate Indifference)

In Counts 5–6, Plaintiff claims Defendant Wadsworth and the City were deliberately indifferent to his medical needs in violation of the Eighth Amendment. (Dkt. 1 ¶¶ 144–195.) Defendants want the Court to dismiss these counts because Plaintiff's claims are technically cognizable under the Fourteenth Amendment (which he did not cite) rather than the Eighth Amendment (which he did cite). (Dkt. 10 at 16.) The Court will not do that. "[T]he standards under the Fourteenth Amendment are identical to those under the Eighth." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). So "the mere fact that Plaintiff asserts his claim

---

[5] Plaintiff has also failed to establish municipal liability under other potential theories, including ratification and a failure to train/supervise.

under the Eighth Amendment is not critical, and the Court simply construes his claim as one arising under the Fourteenth Amendment." *Trapp v. Kimpel*, 2013 WL 4510570, at *8 (S.D. Ohio Aug. 23, 2013). Counts 5–6 may proceed.

### G.    Counts 7–8 and 19 (False Arrest)

Counts 7–8, and 19 assert claims for false arrest against Defendant Wadsworth and the City. (Dkt. 1 ¶¶ 196–216, 383–392.) Defendants say they are entitled to qualified immunity and dismissal is required because "the Officers had actual probable cause to arrest Plaintiff." (Dkt. 10 at 16.) The Court disagrees. As explained above, all we know is that (1) "the shoulder of [Defendant] Wadsworth and the shoulder of Plaintiff made *de minimis* contact as Plaintiff was walking in a crowd of thousands of fellow festival attendees"; (2) Plaintiff was holding an unknown beverage at the time; and (3) Plaintiff had a scooter in the area. These unremarkable facts are not enough to establish even *arguable* probable cause. The Court denies Defendants' motion to dismiss Counts 7–8, and 19.

### H.    Counts 11–14 (Failure to Investigate)

Counts 11–12 claim Defendant Wadsworth and the City "failed to respond, investigate, or take a complaint concerning Plaintiff's 911 call . . . to report the loss of Plaintiff's scooter." (Dkt. 1 ¶¶ 263–266, 269.) Counts 13–14 claim Defendants Walton, Battles and the City failed to adequately investigate Plaintiff's OPS complaint. (Dkt. 1 ¶¶ 276–300.) Defendants say these claims are barred by qualified immunity because they do not allege a violation of clearly established law. (Dkt. 10 at 17–18.) The Court agrees.

Qualified immunity typically applies unless plaintiff can "point to a materially similar case that has already decided that what the police officer was doing was unlawful." *Patel*, 959 F.3d at 1343. Plaintiff has not done that here. He cites four cases in which an officer failed to intervene in real time while another officer used excessive force against the plaintiff. (Dkt. 13 at 18 n.65 & n.66.)[6] But the failure to stop a physical beating is very different than the failure to investigate a

---

[6] *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924–25 (11th Cir. 2000); *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986).

property complaint (Counts 11–12) or the failure to investigate a complaint about an incident that occurred several weeks earlier (Counts 13–14).  A reasonable official could believe cases about the former "might" not control the latter.  *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015) ("Minor variations in some facts . . . might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents.").   So the cases do not constitute materially similar precedent.

Because Plaintiff has not cited materially similar precedent, qualified immunity applies unless Defendants' conduct violated federal law "as a matter of obvious clarity."  *Coffin*, 642 F.3d at 1014; *see King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020); *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017).  To avoid qualified immunity under this theory, Plaintiff must show (1) "the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful," or (2) "the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct

did violate federal law when the official acted." *Gaines*, 871 F.3d at 1209. This is "a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." *Coffin*, 642 F.3d at 1014–15; *Fils*, 647 F.3d at 1291.   "Cases that fall under this narrow exception are rare and don't arise often." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020).

Plaintiff claims Defendants violated the "duty to intervene" applicable to law enforcement personnel.   (Dkt. 13 at 18.)   Under that duty, "if a police officer . . . fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Ensley*, 142 F.3d at 1407.   But "the duty to intervene does not necessarily extend to every conceivable situation involving a constitutional violation." *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 159 F. App'x 916, 920 (11th Cir. 2005). And binding "Eleventh Circuit decisions have limited the cause of action . . . to excessive force cases." *Stallworth v. Hurst*, 2019 WL 5070196, at *2 (M.D. Ala. Oct. 8, 2019) (Brasher, J.); *see, e.g.*, *Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir. 2018) ("An officer's duty to intervene is triggered when he sees a fellow officer use excessive force.");

27

*Johnson v. Boyd*, 568 F. App'x 719, 722 n.2 (11th Cir. 2014) ("[I]t is well settled that [the duty to intervene] applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force.").

Thus, "officers have a clearly established duty to intervene in the use of excessive force when they have the ability to intervene." *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1278 (11th Cir. 2021). But "there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene and is therefore liable under the circumstances presented here." *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999). Nor is it obvious the duty would extend that far. A duty to "stop other officers who summarily punish a third person in [another officer's] presence" seems qualitatively different than a duty to investigate property complaints or complaints about past events. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). To conclude that both duties arise from the general duty to intervene, Defendants would need "to be creative or imaginative in drawing analogies from previously decided cases." *Coffin*, 642 F.3d at 1015. And that is a classic sign that qualified immunity applies. *Id.* The Court cannot say that the general

duty to intervene "clearly establishes the law as to [the] specific set of facts" faced by Defendants here such that "every objective reasonable government official" would have known that duty prohibited Defendants' conduct. *Id.*; *see Malcolm v. City of Miami Police*, 574 F. App'x 881, 882 (11th Cir. 2014) ("[T]he federal violation must have been beyond debate at the time; otherwise qualified immunity applies.").

Plaintiff has not shown Defendants' investigative failures violated clearly established law. So qualified immunity bars Counts 11–14.[7]

## I.  Count 21 (Malicious Prosecution)

Count 21 asserts a state law claim for malicious prosecution against Defendant Wadsworth. (Dkt. 1 ¶¶ 398–401.) Defendants move for dismissal on the ground that Defendant Wadsworth "had probable to arrest Plaintiff." (Dkt. 10 at 20.) But the Court has already concluded probable cause did not exist. So this argument fails. Defendants also claim Defendant Wadsworth lacked malice. (Dkt. 10 at 21.) But they make that argument in a single conclusory sentence without any

---

[7] Counts 12 and 14 fail for the additional reason that Plaintiff has not identified a City policy or custom—adopted with the requisite degree of culpability—that caused Plaintiff's injuries.

explanation or citation to authority.  (*Id.*)   So it, too, fails.  Count 21 is allowed to proceed.

## IV.   Conclusion

Defendants' Motion to Dismiss (Dkt. 10) is **GRANTED IN PART** and **DENIED IN PART**.  The Court allows the following claims to proceed:  Count 1; Count 3 to the extent it asserts a Fourth Amendment claim; Counts 5–10; and Counts 15–21.  The Court dismisses Plaintiff's other claims.  The Court also dismisses Defendants Officers John Doe 1–5 and Officer Jane Doe 1.[8]

**SO ORDERED** this 16th day of September, 2021.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[8] The Court is disappointed with the quality of Defendants' motion-to-dismiss briefing.  It lacks rigor and depth.  And it rarely moves beyond the general.  For example, while it cites caselaw for the basic legal standards governing Plaintiff's claims, it cites almost nothing particularized to the facts of our case.  The Court was forced to do that work on its own.  Defendants' reply brief is particularly unilluminating because it fails to engage with Plaintiff's opposition brief on any substantive level.  If Defendants later move for summary judgment, the Court expects substantial improvement.  *See Makita U.S.A., Inc. v. Factory Direct Distributors LLC*, 2014 WL 12605510, at *1 (S.D. Fla. Aug. 6, 2014) ("When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased.").