FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 12 2023

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JUSTIN T. TOLSTON,<br>Plaintiff, | )<br>)<br>)<br>)<br>)<br>) | No. 1:20-CV-04221-SEG<br><br>**REQUEST FOR PRETRIAL<br>HEARING FOR<br>PRELIMINARY<br>INJUNCTIVE RELIEF** |
| v.<br><br>CITY OF ATLANTA, ET AL<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | **BENCH TRIAL REQUESTED<br>IN THE ALTERNATIVE<br>FOR PERMANENT<br>INJUNCTIVE RELIEF** |

**_PRO SE_ PLAINTIFF'S FED. R. CIV. P. 65 MOTION AND INCORPORATED
BRIEF IN SUPPORT FOR A HEARING ON PRELIMINARY INJUNCTIVE
RELIEF AGAINST THE CITY OF ATLANTA ENJOINING OFFICERS FROM
DEACTIVATING THEIR BODY WORN CAMERAS AT ANY POINT WHILE
INTERACTING WITH A CITIZEN THAT IS DETAINED OR IN THEIR
CUSTODY; ALTERNATIVELY, A REQUEST FOR A CONSOLIDATED
HEARING AND BENCH TRIAL ON THE MERITS FOR PERMANENT
INJUNCTIVE RELIEF PURSUANT TO FED. R. CIV. P. 65(a)(2)**

**COME NOW**, _pro se_ Plaintiff in this Fed. R. Civ. P. 65 motion for a hearing

on preliminary injunctive relief to: restrain or enjoin officers of the Atlanta Police

Department from deactivating their body worn cameras at any point while

interreacting with a citizen who is detained or in their custody. Alternatively, a

request for a consolidated hearing **for permanent injunctive relief and bifurcated**

**bench trial on the merits.**

Page 1 of 29

**STATEMENT OF RELEVANT FACTS**

In support for this motion for preliminary injunctive relief Plaintiff hereby incorporates the facts outlined in *pro se* Plaintiff's Amended Statements of Additional Undisputed Facts.[1] [Docs. 176-3 & 176-4] This a 42 U.S.C. § 1983 action for excessive force, false arrest, malicious prosecution, and failure to hire and train, commenced on October 13, 2020, concerning *pro se* Plaintiff's arrest by Atlanta Police officers at a festival in Piedmont Park in Atlanta, Georgia on October 14, 2018. [Docs. 1 & 88-1, generally]

The present record includes eight disjointed videos, including five from the body worn camera of Officer Keith Wadsworth and three from Officer Lawrence Holland ("Defendant Officers") [Doc.168, Pl's Tr. Exhs. 11 – 18] — but none of that footage depicts: the initial *de minimis* contact [Doc. 149-1 p. 83; Tolston, 83:10-17]; the use of force [Doc. 149-1, Tolston, 26:13-18; Doc. 173-15 p. 2]; the *quid pro quo* [Doc. 149-1, Tolston, 86:9-16; Doc. 168, Pl's Tr. Exh. 11 at 3:59-4:01]; the final location of Plaintiff's ultimately lost electric scooter; or **how *pro se* Plaintiff went**

---

[1] Beyond judicial economy, incorporation of *pro se* Plaintiff's Amended Statements of Additional Undisputed Facts will afford Defendants another bite at the apple to more thoroughly respond to the facts outlined therein — should they so choose as indicated by their most recent filing [Doc. 198 p. 4]; See *MSR Markets LTD. v. McDonald*, 593 F. Supp.3d 1214, 1215 (N. D. Ga. Mar. 22, 2022) (holding "Third, counsel for Defendant did not deliberately disregard Local Rule 56.1 and the Court's standing order when omitting the statement of undisputed facts. The omission was simply an oversight by counsel.").

**from standing upright outside to ending up prone on the ground complaining of severe head pain.** [*Compare* Pl's Tr. Exh. 16 *to* 17, Doc. 168] No body worn camera footage was produced from: a third who was standing next to the Defendant Officers [173-15 p. 2]; a female officer on the scene [Doc. 168, Pl's Tr. Exh. 11 at 0:01-05], two superior officers who Keith Wadsworth interacted with following the use of force [Doc. 168, Pl's Tr. Exh. 11 at 0:15-23, 2:30-35]; or four officers at a table. [Doc. 168, Pl's Tr. Exh. 12 at :00 - 08]

However, the footage does show when Officer Wadsworth admitted he "had to slam" Plaintiff. [Doc. 168, Pl's Tr. Exh. 11 at 0:21-23]

Beyond Plaintiff's arrest, thirteen Office of Professional Standard "miscellaneous" complaints from 2018 involving body worn camera non-compliance coupled with other misconduct. [Docs. 173-29 - 173-41]

In addition to the compaints, the then-mayor, city council, and chief of police had record notice of the deficiencies of body worn camera usage and associated misconduct via a December 2018 report by the City's Auditor analyzing body worn camera usage for nine months preceding Plaintiff's arrest—which found body worn camera compliance was between thirty-three (33) and forty-six (46) percent. [Doc. 173-17 p. 4] Moreover, both former chiefs of police for Defendant City were aware of the importance of body worn camera footage. [Shields, 14:14-24, 29:22-25 to 30:1-2; Bryant, 10:12-16, 19:14-17]. The following year

Page 3 of 29

instances of excessive force increased seventy percent, including Jimmy Atchison being fatally shot in the face *during the execution* of search warrant while surrendering.[2] [Doc. 173-43 p. 5, Pl's Tr. Exh. 81 at p. 5]

After years of inaction, following the police murder of George Floyd, Breonna Taylor, Mayor Keisha Lance Bottoms signed executive orders asserting compliance had risen to ninety-six percent, but as of 2021, during the deposition of then-Chief of Police Rodney Bryant, those numbers could not be verified nor could the methodology for their calculation be explained. [Bryant, 22:3-4; Pl's Tr. Exh. 51 p. 8]

DISCUSSION

I. **A PRELIMINARY INJUNCTION ENJOINING OFFICERS OF THE ATLANTA POLICE DEPARTMENT FROM DEACTIVATING THEIR BODY WORN CAMERAS AT ANY POINT WHILE INTERACTING WITH A CITIZEN WHO IS DETAINED OR IN THEIR CUSTODY IS IN THE OVERWHELIMING PUBLIC INTEREST TO PRESEVE EVIDENCE AND DETER UNCONSTITUTIONAL MISCONDUCT**

Although an extraordinary form of relief,[3] a district court has wide discretion to issue an injunction,[4] and in rare instances district courts may grant

---

[2] Shaddi Abusaid, *Jimmy Atchison Case: Ex-Atlanta Police Officer Booked, Released On $50K bond*, Atlanta Journal-Constitution, Dec. 27, 2022.

[3] *Siegel v. LePore*, 234 F.3d 1168, 1176 (11th Cir. 2000) (holding "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." (internal quotations omitted)).

[4] *Ferrerro v. Assoc. Materials Inc.*, 923 F.2d 1443, 1444 (11th Cir. 1991) ("Findings of fact made in connection with a grant of a preliminary injunction are set aside only

nationwide, or universal injunctions.[5] Injunctive relief may be granted even when not explicitly requested in the original complaint[6] and can be sought in addition to damages for violations of 42 U.S.C. § 1983.[7]

To prevail, a party must carry the burden of persuasion by showing: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing

---

if clearly erroneous. While findings of law are ordinarily reviewable *de novo*, this Court will defer to a district court's interpretation of unsettled questions of the law of the state where the court sits.").

[5] *State of Fla. v. Dep't of Health and Human Srvs.*, 19 F.4 th 1274, 1281-82 (11th Cir. 2021) (holding "To begin with, a federal district court may issue a nationwide, or universal, injunction in appropriate circumstances" (internal quotations omitted).
[6] *Carter v. Diamondback Golf Club, Inc.*, 222 F. App'x 929, 931 (11th Cir. 2007) (holding "The district court should not have denied declaratory and injunctive relief merely because Carter failed to specifically request such relief in his complaint. Pursuant to Rule 54(c)of the Federal Rules of Civil Procedure, a court may grant such relief as is proper notwithstanding the failure of a party to demand such relief in the pleadings.").
[7] *Tokyo Gwinnett, LLC v. Gwinnett Cty, Georgia*, 940 F.3d 1258, 1258 (11th Cir. 2019) (finding "In 2015 Tokyo Valentino sought damages under 42 U.S.C. § 1983 and declaratory and injunctive relief. Unfortunately for these parties, they have been litigating ever since.").

party;[8] and (4) if issued, the injunction would not be adverse to the public interest."[9]

Fed. R. Civ. P. 65(a)(1) states: "The court may issue a preliminary injunction only on notice to the adverse party." The Eleventh Circuit has held: "While an evidentiary hearing is not always required before the issuance of a preliminary injunction, where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held."[10]

Here, Plaintiff was maliciously prosecuted during a retaliatory cover-up following officers' use of excessive force. The spoliation of evidence via the deactivation of their body worn cameras creates a pre-enforcement likelihood for irreparable harm; and the sought injunction is in the overwhelming public interest

---

[8] *Common Cause/Georgia v. Billups*, 554 F.3d 1345, 1345 (11th Cir. 2009) ("This appeal concerns whether the legitimate interest of the government of safeguarding the exercise of a civil right is outweighed by a corresponding burden of that right.").

[9] *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11thCir. 1998); *see also New Georgia Project v. Raffensperger*, 484 F. Supp.3d 1288 (N. D. Ga. 2020).

[10] *Four Seasons Hotels and Resorts v. Consorcio Barr*, 320 F.3d 1207, 1211-12 (11th Cir. 2003) (internal quotations omitted) (holding "However, where, as here, the material facts underlying the complaint and the injunction are disputed, the district court is required to hold a hearing which affords both parties an adequate opportunity to present their arguments and educate the court about the complex issues involved.").

as both most recent erstwhile chief policymakers for Defendant City created

standard operating procedures that support the requested relief.

**A. Plaintiff Has Shown A Substantial Likelihood Of Success On The Merits Because Officers Maliciously Prosecuted Plaintiff For Three Trumped-Up Offenses Fueled By Retaliatory Animus Because Plaintiff Requested Their Badge Numbers Following The Use Of Excessive Force**

Although there are numerous claims before the Court, the two causes of

action most directly related to the injunctive relief sought are the use of excessive

force, and subsequent malicious prosecution as part of the cover-up for their

actions.[11]

**i.   The Record Shows That The Force Deployed Against *Pro Se* Plaintiff Was Gratuitous And Thereby Conscious-Shockingly Excessive Under The Totality Of The Circumstances**

Irrespective of whether Defendant Officers possessed arguable probable

cause after the *de minimis* contact—which they did not [Doc. 176-2 pp. 22-43]—the

---

[11] *Griffin v. City of Opa-Locka*, 261 F.3d 1298, 1305 (11th Cir. 2001) (holding "Although we are unaware of any cases directly on point, we believe our conclusion that Neal was acting under color of law is supported by several cases where state employees were held to be acting under color of law when they utilized their authority to create the opportunity for or to facilitate a sexual assault.").

force utilized was objectively unreasonable, gratuitous, and conscious-shockingly excessive given the totality of the circumstances.[1213] [Doc. 176-2 pp. 44-46]

   *Pro se* Plaintiff was not given any warning prior to the use of physical force; and Plaintiff was not told of being under arrest or informed that Defendant Officers intended to physically escort Plaintiff out of the park before going hands on. [Doc. 149 p. 78, Tolston, 78:1-7] Furthermore, Plaintiff was not resisting, had engaged in brief dialogue with the officers, and eventually stood accused of only the most minor city ordinance offenses. The gratuitous use of force by Defendant Officers was so excessive that as a result Plaintiff lost consciousness; suffered a neck strain; and was diagnosed with post-concussive syndrome — which negatively impacted his post-doctoral studies. [Doc. 176-8 pp. 2-3]

   Under the totality of the circumstances, *pro se* Plaintiff is substantially likely to succeed on the merits regarding whether officers engaged in excessive force.

   **ii.   The Evidence Shows Officers Maliciously Prosecuted Plaintiff In Retaliation For Plaintiff's Protected Speech When Officer Holland**

---

[12] For economy and to avoid duplicity, the facts and arguments regarding the use of excessive force as set forth in Plaintiff's response in opposition to the motion for summary judgment filed on behalf of Defendant Keith Wadsworth are hereby incorporated by this reference. [Doc. 176-2 pp. 44 – 52]

[13] *Vinyard v. Wilson*, 311 F.3d 1342, 1355 (11th Cir. 2002) (holding "Considering Vinyard's version of the events, no factually particularized, preexisting case law was necessary for it to be very obvious to every objectively reasonable officer facing Stanfield's situation that Stanfield's conduct during the jail ride violated Vinyard's constitutional right to be free of the excessive use of force.").

### Stated "He's Gonna Take A Ride" In Response To Plaintiff Requesting "Everybody's Badge Number"

The Court will likely not see a clearer case of first amendment retaliation by a police officer.[14] Prompted by either the realization that arguable probable cause was wanting from the jump, or that any objectively reasonable arguable probable cause had surely dissipated [Doc. 176-2 pp. 28-35] — Officer Wadsworth gave Plaintiff a move-on command to leave the park. The unlawful command was coupled with the instruction to his co-conspirator, Officer Lawrence Holland to "uncuff" *pro se* Plaintiff and to "do it now." [Pl's Tr. Exh. 11 at 1:19-23]

The move on order showed the intention for Plaintiff to be released. Seconds later, while actively being uncuffed, Plaintiff twice requested "Everybody's badge number." [Pl's Tr. Exh. 11 at 1:44-48] Officer Holland immediately responded: "He's gonna take a ride." [Doc. 168, Pl's Tr. Exh. 11 at 1:49-52] The continued detention alone was sufficient punitive to find first amendment retaliation.

However, Moments after Officer Holland's proclamation, Plaintiff was presented in front of a superior officer and offered a *quid pro quo* in another

---

[14] For economy and to avoid duplicity, the facts and arguments regarding the malicious prosecution fueled by animus for protected first amendment speech as set forth in Plaintiff's response in opposition to the motion for summary judgment filed on behalf of Defendant Keith Wadsworth are hereby incorporated by this reference [Doc. 176-2 pp. 52 – 60].

instance of retaliation. During the *quid pro quo*, Plaintiff's freedom was offered in

exchange for silence — in the form of forgoing the badge numbers of the maligned

officers. Just before Plaintiff was taken aside, Defendant Wadsworth's body worn

camera catches the intentional premature deactivation of Officer Holland's body

worn camera in furtherance of their effort to cover-up the misconduct. [Doc. 168,

Pl's Tr. Exh. 11 at 4:06]

Under the totality of the circumstances, and given the video evidence, a trier

of fact is substantially likely to conclude Plaintiff will succeed on the merits — and

that a jury was entitled to see the evidence of the exculpatory exchange between

Plaintiff and the superior officer.

**B. The Record Shows Irreparable Harm Will Be Suffered By Increased
Instances Of Unconstitutional Conduct Coupled With The Irretrievably
Loss Of *Brady* Material, And Evidence In Civil Litigation**

Beyond the increased likelihood for unconstitutional conduct associated

with their non-use, irreparable harm will be suffered by the continued loss of *Brady*

material,[15] and evidence in both officer misconduct investigations and in civil

litigation. A further irreparable harm is the continued chilling of Plaintiff's

---

[15] *Brady v. Maryland,* 373 U.S. 84, 88 (1963); See also *Giglio v. United States,* 405 U.S.
150, 155 (1972) (holding "evidence of any understanding or agreement as to a
future prosecution would be relevant to his credibility and the jury was entitled to
know of it.").

freedom of liberty out of the pre-enforcement fear of persecution by anonymous officers.

In the context of injunctive relief, a pre-enforcement review involves "the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained."[16] In a "pre-enforcement review, the standing and ripeness inquiries may tend to converge."[17]

In *Los Angeles v. Lyons*, "Lyons was stopped by the defendant officers for a traffic or vehicle code violation and that although Lyons offered no resistance or threat whatsoever, the officers, without provocation or justification, seized Lyons and applied a chokehold [r]endering him unconscious and causing damage to his larynx."[18] Lyons sought an injunction restraining officers from using chokeholds because "Lyons' complaint alleged that two deaths had occurred as a result of the application of the chokeholds by the police."[19] Instead of banning chokeholds by police, in analyzing the irreparable harm element, the court reasoned the facts did not warrant an injunction at all because, in their view, there was an insufficient likelihood that the same circumstances would remanifest.

---

[16] *Elend v. Basham*, 471 F.3d 1202, 1205 (11th Cir. 2006).
[17] *Id.*
[18] *Los Angeles v. Lyons*, 461 U.S. 97, 97-98 (1983).
[19] *Id.* at 100.

Unlike in *Lyons*, in *Honig v. Doe*, the Supreme Court found the circumstances posed irreparable harm when the state failed to provide disability services for public school children who were unilaterally removed from classroom by the school district "for dangerous or disruptive behavior."[20] Ultimately, the court held "Given these representations, we have every reason to believe that were it not for the injunction barring petitioner from authorizing such unilateral action, respondent would be faced with a real and substantial threat of such action in any California school district in which he enrolled."[21]

In *Messina v. City of Ft. Lauderdale, Florida,* Plaintiffs "sued the City under 42 U.S.C. § 1983 for past and ongoing injuries to their rights" related to ordinances that banned panhandling from within a certain distance at specified public and commercial locations throughout the city.[22]

The Plaintiffs in *Messina* were Broward County residents and they'd "either lived without permanent housing or struggled to pay for basic needs and expenses and they rely on donations for their subsistence. Messina solicits pedestrians for donations, typically on city sidewalks near commercial areas or out-door cafes—

---

[20] *Honiga v. Doe*, 484 U.S. 308, 308 (1988).
[21] *Id.* at 317.
[22] *Messina v. City of Ft. Lauderdale*, 546 F. Supp.3d 1231, 1231 (11th Cir. 2021).

though sometimes he stands on the medians or shoulders of roads to ask for donations from motorist who are temporarily stopped in traffic."[23]

The court noted Mr. Messina "often holds a sign with a religious message and sometimes distributes pamphlets, hoping for donation in return." On "several occasions, he's seen the police arrest other panhandlers. Mr. Messina panhandles a few times a week and would like to do so more often, but he doesn't because of his fear of arrest."[24]

The court found after "a hearing and a careful review of the record, we conclude that the Plaintiffs are likely to succeed on the merits of their claims and that they've satisfied the other requirements for preliminary injunctive relief."[25]

In *Walker v. City of Calhoun,* the Eleventh Circuit was tasked to "decide what process the Constitution requires in setting bail for indigent arrestees" regarding a twenty-four versus forty-eight hour bail determination period and if the district

---

[23] *Messina,* <u>546 F. Supp.3d 1232</u>

[24] *Id.* at 1231. (finding "the Plaintiffs didn't have to be arrested or prosecuted to raise a facial challenge to the Ordinances under the First Amendment; they only needed to do precisely as they did: allege that they (1) intended to engage in the banned activity and (2) faced a credible threat of prosecution.").

[25] *Id.*

court erred in entering injunctive relief.[26]  The City updated their bail policy and claimed, *ipso facto*, that the matter was moot.[27]

However, the court noted: "When a *government* voluntarily ceases the challenged action, however, there is a presumption that the government will not later resume the action, so the plaintiff bears the burden of showing that there is 'a reasonable expectation' that the government 'will reverse course and reenact the allegedly offensive' policy."[28] "The key inquiry in this mootness analysis therefore is whether the evidence leads [the court] to a reasonable expectation that the City will reverse course and reenact the allegedly offensive bail policy after this litigation ends."[29]

First, "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction."[30] This requires examining "the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it."[31] Second, "whether

---

[26] *Walker v. City of Calhoun*, 901 F.3d 1250, 1250 (11th Cir. 2018) (holding "The Supreme Court has repeatedly recognized that wealth-based detention is not permitted by our Constitution.").

[27] *Id.* at 1256.

[28] *Walker*, 901 F.3d 1270 (quoting *Flanigan's Enters. Inc. of Ga. v. Sandy Springs*, 868 F.3d 1250, 1255-56 (11th Cir. 2017) ("burden of mootness generally falls heavily on the party asserting it.")).

[29] *Id.* at 1270.

[30] *Id.*

[31] *Id.*

the government's decision to terminate the challenged conduct was `unambiguous'" — i.e., "whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete." And, third, "whether the government has consistently maintained its commitment to the new policy or legislative scheme."[32]

**Here, no less than ten officers violated body camera policy.** Like in *Hogin* and unlike in *Lyons*, the loss of potential Brady material, objective civil evidence, and deterring unconstitutional conduct presents an irreparable harm sufficient to warrant an injunction. Moreover, like in *Messina*, Plaintiff stated the nature of living transiently since graduating law school, and recently resides in the Atlanta metro area — although domiciled in Nebraska. Also, like in *Messina*, Plaintiff has not attended a festival since the arrest as the ongoing wanton disregard for body worn cameras poses a continual irreparable harm as Plaintiff has firsthand experience of the brutal lawlessness within Atlanta police.

Like in *Walker*, even if the City claims that the updated body worn policy moots the need for the sought injunction: Defendant City only updated their body worn camera policy — after Plaintiff sued the City for the unconstitutional

---

[32] *Walker*, 901 F.3d 1270.

indifference toward misconduct by Atlanta police officers. [*Compare* 153-2 *to* 173-18]

You can put lipstick on a pig—but its still a pig: the previous body worn camera policy under Chief Shields mandated a host of procedures that openly went unfollowed. Therefore, belatedly updated Bryant policy provides no solace that officers will not continue flouting the rules of the body worn camera policy.[33]

Beyond the *Brady* context, body worn cameras are the best tool for the court to obtain objective and unbiased evidence for civil litigation. However, the Office of Professional standard—the internal agency tasked with investigating and discipling misconduct, including body worn camera non-compliance, as of December 2021—had yet to be assessed for its need to fulfill its accountability role. [Bryant, 110:12-16]

For one tragic, heart-breaking example: Jimmy Atchison did not deserve to die. And the indifference showed by policymaking officials for the City regarding body worn cameras contributed to **both** his conscious-shocking passing—and the yearslong delay in charging the officer involved.[34] Body worn camera footage

---

[33] The Auditor's Report noted that supervisors were to review footage, but their analysis determined that less than two (2) percent of all the footage was reviewed by a supervisor. [Doc. 173-17 pp. 2-3]

[34] *Bates v. Kim*, 591 F. Supp.3d 1357, 1357 (N. D. Ga. Mar. 7, 2022) (holding "This Order addresses a case where law enforcement's attempted execution of a federal arrest warrant turned into a raid resulting in the death of Jimmy Atchison, a

would have undoubtedly provided a glimpse into what transpired. Officer Kim should have been equipped with an activated body camera, and the footage would have prevented partial justice from being deferred more than three years. **Despite the Auditor's report, numerous internal affair complaints, and the death of Jimmy—it took that same three years' time—for the city to take any action or update the body camera policies.** [Doc. 153-2 p. 1]

### C. The Public Interest Overwhelmingly Weighs In Favor Of Issuing The Sought Injunctive Relief To Preserve Evidence And Discourage Unconstitutional Abuses Of State Police Powers

The final two elements—damage to the proposed enjoined party and the public interest of the sought injunctive relief—merge when the government is the entity opposing the injunction. Thus, the Court must weigh the "balance-of-the-harms and public-interest factors" to determine if the moving party has met the burden of persuasion.

Here, the City made a conscious decision to ignore gross and systemic violations of body worn camera policy that resulted in the loss of video footage

---

resident of Atlanta."); See Henri Hollis, *3 Years Later, Family of Man Killed by Atlanta Officer Questions DA's Priorities*, Atlanta Journal-Constitution, Jan. 21, 2022; see also Aungelique Proctor, *Jimmy Atchison Shooting: Family of Atlanta Man Killed by police In 2019 Want Officer Indicted*, Jan. 21, 2022 ('[H]e was unarmed and trying to surrender,' Attorney Tanya Miller proclaimed.").

from more than a quarter of a million interactions between Atlanta officers and members of the public in the lead up to Plaintiff's arrest.  [Doc. 173-17 p. 16][35]

While body worn camera usage is not a panacea for alleviating unconstitutional misconduct, avoiding costly litigation, or preserving evidence — the devices are undeniably the most consequential tool in police accountability since dash cameras. There is no more objective record than a video from a police encounter — and the killing of Jimmy Atchison shows the deadly consequences at stake.

The Court must not be arrested into the same indifference that handcuffed chief policymaking officials into inaction. The Court need only entertain one question when deciding the watershed narrow issue at bar:

Who will police the police?

If democratically elected members of state legislatures use their unenumerated constitutional authority to manifest municipalities and they, in turn, use their administrative or pseudo executive authority, whether through a strong mayoral system or a city council, to create departments to maintain peace

---

[35] The report notes that 491,753 body camera videos were created from November 2016 to May of 2018, Conservatively, with an average compliance rate of less than fifty percent, more than a quarter of a million body camera files were not properly recorded.

and enforce the law: Who will hold agents of those agencies accountable when they openly run rogue in the face of indifference by policymaking officials?

The issue before the Court does not concern just one person — damage to mere ego, reputation, property, or Pride. sought injunction The is in the overwhelming public interest as it seeks the Court to enforce the rule of law by countering the gang-like atmosphere created by Atlanta police officers who act with a hellacious mix of impunity coupled with anonymity.

There is no greater example of taxation without representation then denial to be free of abuse perpetrated and perpetuated by the very state-created system that citizens bankroll to the tune of 200 million dollars annually.

Like deep-pocketed corporate forces who have successfully lobbied lawmakers and captured key institutions to privatize profits while liberalizing their losses; law enforcement interests have won immense authority under judicial cover to inflict the most grievous forms of harm. Their carte blanche has expanded to include extrajudicial cessation of being — but through qualified immunity and no true bills (if a grand jury is ever impaneled), leaving only society's collective conscious — and not the courts — to grieve in the fallout of the wake.

A judicial order mandating the activation of body worn cameras and restraining officers from deactivating their devices is the only solution in the face of legislative inaction. Such an order would pose only a minimal harm on

Defendants as their own updated policy stops just short of the injunctive relief sought.

### D. All Atlanta Police Officers May Be Enjoined From Deactivating Their Body Worn Cameras Because They Are In Contractual Privity With The Defendant City By Virtue Of Their Employment

Although the City of Atlanta Police Department is not a party nor are all sworn officers—Fed. R. Civ. P. 65 allows for two categories of nonparties to an action to be bound by an injunction. "The first category is comprised of parties who aid and abet the party bound by the injunction in carrying out prohibited acts.[36] And "The second category includes [n]onparties otherwise in legally identified with the enjoined party. (internal quotations omitted)"[37]

In *Northstar*, the Eleventh Circuit had to decide "whether a nonparty, not in privity with a party to an injunction, may be bound by that injunction as a successor in interests under the theory of de facto merger." In that case, ADT won injunctive relief against a smaller competitor, Vision Security, for Lanham Act violations. Northstar Alarm Services, LLC "acquired customer accounts, rental leases, and other assets from Vision Security and hired four senior officers and some of the sales team of Vision Security." ADT sought to enforce the injunction

---

[36] *ADT LLC v. NorthStar Alarm Srvs, LLC* 853 F3d 1348,1352 (11th Cir. 2017) (citing *F.T.C. v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010)).
[37] *Id.*

against Northstar. However, the Eleventh Circuit agreed with the district court that were "not in privity because there was 'insufficient evidence to conclude that Northstar's interests are so intertwined with Visions that Northstar should be bound by the injunction."

Here, all Atlanta police officers are employed by the City and, *ipso facto*, they are all in contractual privity with Defendant City of Atlanta. Unlike in *Northstar*, the contractual privity via an employment relationship makes officers of the Atlanta Police Department so intertwined as to be the type of category of non-party that may be bound by injunctive relief as they are agents of the City.

### E. No Bond Should Be Required Due To The Minimal Administrative Burden The Sought Injunctive Relief Would Impose

No security bond should be required as the minor administrative burden sought is overwhelming in the public interest and largely mirrors existing Defendant City policy. Pursuant to the <u>Fed. R. Civ. P. 65(c)</u>: The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

However, in the Eleventh Circuit "[I]t is well-established that the amount of security required by the rule is a matter within the discretion of the trial court and

the court may elect to require no security at all."[38] Here, no bond should be required as the administrative burden would cause no damage at all to Defendants and the sought relief is in the overwhelming public interest as aforementioned.

## II.   ALTERNATIVE, REQUEST FOR A CONSILIDATED HEARING ON INJUNCTIVE RELIEF AND BENCH TRIAL ON THE MERTIS WITH BIFURCATED JURY TRIAL ON DAMAGES

Alternatively, *pro se* Plaintiff requests a consolidated hearing for permanent injunctive relief and a bifurcated bench trial on the merits on liability for all remaining causes of action with a jury trial limited to damages.

The Supreme Court has held "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."[39] Fed. R. Civ. P. 65(a)(2), states: "Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial

---

[38] *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Srvs., LLC*, 425 F.3d 966, 996-67 (11th Cir. 2005) (holding "BellSouth showed a substantial likelihood of success on the merits and both the balance of harms and the public interest supported the entry of a preliminary injunction.); See also *Ga Coalition For People's Agenda, Inc. v. Kemp*, 347 F. Supp.3d 1255, 1269 (N. D. Ga. Sept. 2, 2018) ("In its discretion, the Court waives the preliminary injunction bond requirement.").
[39] *Amoco Prod. Co. v. Gambell*, 480 U.S. 534, 556 n. 12 (1987).

becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial."

In *Thomas v. Bryant*, Eleventh Circuit was tasked with determining "whether the district court erred in concluding that the DOC's non-spontaneous use-of-force policy, as applied to McKinney, violates the Eighth Amendment and whether its permanent injunction was both necessary to remedy the violation of McKinney's rights and also properly tailored to the identified harm."[40] The court held, "finding no error in the district court's thorough conclusions of law and narrowly tailored injunction, we affirm."[41]

Fed. R. Civ. P. 42(b) states: "for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."

Typically, "once a demand for a jury trial is made, it can only be withdrawn with the consent of all parties."[42] But a district court has wide discretion to

---

[40] *Thomas v. Bryant*, 614 F.3d 1290, 1295 (11th Cir. 2010) (noting "In September 2008, after four years of litigation, the district court held a five-day bench trial on the plaintiffs' claims for declaratory judgment and injunctive relief...After trial, the district court entered a 75-page order in which it made extensive findings of fact and conclusions of law based on this evidence.").

[41] *Id.*

[42] *Marshall v. Tidal Wave Response, LLC*, Case No 1:21-cv-05186-SDG (N. D. Ga. Dec. 28, 2022).

bifurcate a trial between liability and damages.[43] However, "In making that decision, the court considers the following factors: whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different."[44]

In *Pottinger v. City of Miami*, persons without homes brought sought declaratory and injunctive relief against the city for arbitrary nuisance arrests. The district court held a bench trial or "non-jury portion [b]ifurcated trial, which focused solely on the issue of liability" and ordered sweeping equitable relief.[45]

In *Overseas Prv. Inv. Corp. v. Metropolitan Dade Cty.*, the Eleventh Circuit held "that the jury instructions and verdict forms were confusing and unclear, resulting

---

[43] *Beauchamp v. Russell*, <u>547 F. Supp. 1193, 1199</u> (N. D. Ga Sept. 13, 1982) (holding "The decision to grant or deny a motion for separate trials on the issue of liability and damages is committed to the sound discretion of the court.); See *Burger King Corp. v. Mason*, <u>710 F.2d 1480, 1487</u> (11th Cir. 1983) (holding "The record before us confirms our belief that the liability and damages issues were also separable in this instance."); *See also Ilias v. USAA Gen Indem. Co.*, <u>61 F.4th 1340, 1343</u> (11th Cir. 2023) (noting "the case proceeded to a trial on damages (Dunbar conceded liability), and Ilias obtained a judgment against Dunbar in the amount of $5,230,559.44.").

[44] *Brown v. Advantage Eng'g, Inc.*, <u>732 F. Supp. 1164, 1170</u> (N. D. Ga. Feb. 20, 1990).

[45] *Pottinger v. City of Miami*, <u>819 F. Supp. 1553, 1564</u> (S. D. Fla. Nov. 16, 1992) (holding "The City's practice of arresting homeless individuals for the involuntary, harmless acts they are forced to perform in public is unconstitutional because such arrests are cruel and unusual in violation of the eight amendment, reach innocent and inoffensive conduct in violation of the due process clause of the fourteenth amendment and burden the fundamental right to travel in violation of the equal protection clause[.]").

in confusing damage awards. [46]  However, ultimately the court held "Because the verdict clearly shows the jury found defendants liable under each theory, we remand for a new trial on damages only."[47]

Here, Plaintiff is seeking injunctive relief, and *ipso facto*, a bench trial and consolidated hearing pursuant to Fed. R. Civ. P. 65(a)(2) is undoubtedly in the interest of judicial economy, and would result in a more expeditious resolution. Consolidation would allow the Court to conduct both an evidentiary fact-finding hearing, and a trial on the merits at the same, halving the burden on all parties.

Not only is equitable relief sought—which is within the purview of the Court—prosecuting a case under the legal theory of *Monell* liability before the bench would expedite litigation as separatee trials will avoid the prejudice of attempting to explain the nuisances of the *Monell* theory of liability to individuals unlearned in the law.

Furthermore, the liability of Defendants is completely severable from the damages associated with the reputational, physical, financial, and mental harm inflicted by Defendants.[48] In testament to this fact, at least three witnesses,

---

[46] *Overseas Prv. Inv. Corp. v. Metro. Dade Cty.*, 47 F.3d 1112, 1112 (11th Cir. 1995).
[47] *Id.*
[48] See *Slicker v. Jackson*, 215 F.3d 1226, 1227 (11th Cir. 2000) (ruling "Because a § 1983 plaintiff alleging excessive force may receive compensatory damages for such things as physical pain and suffering and mental and emotional anguish, and because a § 1983 plaintiff whose constitutional rights are violated is entitled to

including a prominent civil rights attorney and a former Emory University School of Law Dean would not be required to appear should the Court not find Defendants liable. Thus, the trial should be bifurcated as the issues are severable.

### III.   IN THE SECOND ALTERNATIVE, REQUEST FOR A CONSILIDATED HEARING ON INJUNCTIVE RELIEF AND BENCH TRIAL ON THE MERTIS

In the second alternative, pursuant to Fed. R. Civ. P. 65(a)(2), Plaintiff requests to proceed with a bench trial on the merits combined with a consolidated hearing for permanent injunctive relief. Given the complexity of the numerous causes of action and the nature of the relief sought here: Plaintiff will waive the right to a jury trial on the merits — in the second alternative — and will proceed with a bench trial before the presiding jurist.

**CONCLUSION**

Based on the extensive record, the Court should seize the moment to issue the sought injunction to reign-in out-of-control governmental police authority by merely requiring officers to record encounters that too often end in inconceivable human suffering — with scant avenue for recourse other than years-long, taxing litigation. The sought injunction will be the constitutionally-mandated check on

---

receive nominal damages even if he fails to produce any evidence of compensatory damages, we hold that the district court erred in granting judgment as a matter of law, we vacate the judgment, and remand for further proceedings consistent with this opinion.").

state police authority to rebalance the societal dynamic between the foot soldiers who do the bidding of the select few that govern and the citizens—not subjects— who involuntarily consent to rules of the social contract that orients society.

Citizens are divinely entitled to be more liberated from the most fundamental state harm for which many revolutionary and civil wars have been— and continue to be—fought.

Should Lady Justice turn her blind eye, the *kinetic* question that American society and other non-homogenous nations[49] will eventually answer is: How long does the fabric or *veneer of civilization* endure before Rapture when a growing minority of people, distinguished by pigment and poverty, are denied existence and humanity itself through state-sanctioned police abuse that ravages the prospect for parity?[50]

Due to the pressing public interest whereby each day *Brady* material is lost— in addition to potential evidence in civil litigation—the Court should, *sua sponte*, **ISSUE** in the attached injunction in *abstentia* and **GRANT** *pro se* Plaintiff's request

---

[49] *France Faces George Floyd Moment as Police Shooting Sparks Mass Protest*, Newsweek, June 29, 2023, https://www.newsweek.com/france-riots-protests-george-floyd-police-shooting-1809843.

[50] *Plessy v. Ferguson*, 163 U.S. 540, 559 (1896) (J. Harlan dissent) ("The white race deems itself to be the dominant race in this country…But in the view of the Constitution, in the eye of the law, there is in this country no superior race, dominant ruling class of citizens. There is no caste here.").

for an evidentiary hearing on injunctive relief. In the alternative, *pro se* Plaintiff respectfully prays the Court **GRANT** Plaintiff's request to combine an evidentiary hearing for permanent injunctive relief with a bifurcated bench trial on the merits and jury trial on damages. In the second alternative, *pro se* Plaintiff respectfully prays the Court **GRANT** Plaintiff's request to combine the injunctive relief hearing **with a bench trial on the merits**.

Respectfully Submitted,

Justin Thomas Tolston, JD LLM
7925 Meredith Ave.
Omaha, NE 68134
*Pro se* Plaintiff
402.889.9800